420 So.2d 623 (1982)
WRIGHT & SEATON, INC., Appellant,
v.
Raymond W. PRESCOTT, Appellee.
No. 80-1962.
District Court of Appeal of Florida, Fourth District.
September 15, 1982.
Rehearing Denied November 1, 1982.
*624 Larry Klein, West Palm Beach, and Nixon, Hargrave, Devans & Doyle, Palm Beach, for appellant.
Edna L. Caruso, West Palm Beach, and Susan J. O'Hara, West Palm Beach, for appellee.
GLICKSTEIN, Judge.
This is an appeal from a final judgment entered against an employer insurance agency in favor of the agency's former employee. We reverse and remand.
Appellant is a general insurance agency which has been in business for over fortyfive years in Palm Beach County. It employed appellee in May of 1978 and paid him a salary of $14,000 per year. In early 1979 appellee received a raise of $1,000, and on May 1, 1979, he and appellant executed an employment agreement.
By the terms of the agreement, appellant employed appellee for one year, reserving the right to terminate his employment at any time, with or without cause, upon written notice. Appellee's salary was raised to $20,000 per year and he was to receive ten percent of net commission income on new business he produced. In return he was to perform such executive, administrative, sales or other duties as appellant assigned to him. Appellee also agreed not to engage in a business similar to or in any way competitive with the business of appellant or to solicit appellant's customers during his employment and for three years following termination thereof.[1]
*625 Although the parties performed their agreement for over eleven months, appellee testified that in December of 1979, he had discussed the possibility of other employment with one of appellant's former employees. At the time, they projected that appellee could work for the former employee were the latter to open an insurance agency and appellee to resolve the conflict created by his covenant not to compete with appellant. On April 16, 1980, fourteen days before the agreement expired, appellee delivered to appellant a letter of resignation, effective as of the end of the month, in which he stated the agreement was "void for failure of consideration, inadequate consideration, and lack of mutuality." Immediately two letters were sent to appellee on behalf of appellant. One expressed regret and advised that appellant's management had intended to extend the agreement. The other accepted appellee's resignation immediately, rather than as of the end of the month.
Appellee then went to work for the new agency appellant's former employee had established in West Palm Beach. Appellant filed a complaint and the trial court, after conducting an evidentiary hearing, issued a temporary injunction. At trial, however, the court dissolved the injunction, dismissed the complaint with prejudice, and retained jurisdiction to assess appellee's damages.

I
It was the trial court's opinion that appellee's covenant not to compete was unenforceable because the agreement lacked mutuality, which we interpret to mean a lack of mutuality of obligation.[2] One of the most illuminating discussions we have come across with respect to "mutuality of obligations" appears in Meurer Steel Barrel Co. v. Martin, 1 F.2d 687, 688 (3d Cir.1924):
As an unilateral contract is not founded on mutual promises, the doctrine of mutuality of obligation is inapplicable to such a contract. It is applicable, however, to a bilateral contract containing mutual executory promises because there both parties are bound by reciprocal obligations and the promise of one is the consideration for the promise of the other. If for any reason the promise of one party is not binding upon him, it is not a sufficient consideration for the promise of the other and the contract is void for want of consideration. Velie Motor Car *626 Co. v. Kopmeier, 194 F. 324, 114 C.C.A. 284; Bernstein v. W.B. Mfg. Co., 238 Mass. 589, 131 N.E. 200. The terms "consideration" and "mutuality of obligation" are sometimes confused. "Consideration is essential; mutuality of obligation is not unless the want of mutuality would leave one party without a valid or available consideration for his promise. The doctrine of mutuality of obligation appears therefore to be merely one aspect of the rule that mutual promises constitute considerations for each other. Where there is no other consideration for a contract, mutual promises must be binding on both parties. But where there is any other consideration for the contract, mutuality of obligation is not essential."
See also Bales v. Journeymen Barbers', Hairdressers', Cosmetologists' & Proprietors' International Union Local No. 867, 239 So.2d 624 (Fla. 4th DCA 1970); 17 C.J.S. Contracts § 100 (1963).
We start out with the proposition that, in this case, the parties entered into a bilateral contract containing mutual executory promises. Appellant agreed to continue to employ and pay appellee; appellee agreed to work for appellant and not to compete with it for a period of time in a certain area when his employment terminated. Appellant retained the right, however, to terminate the employment without cause. But this right could only be exercised upon the giving of written notice. Given the foregoing, the initial inquiry (although, as we shall see, not the determinative one) is whether there was mutuality of obligation at the inception of the agreement and, if not, whether it was unnecessary because of the existence of other consideration; both are questions of law.
Our inclination is that mutuality of obligation did not exist when the parties executed their agreement because appellant had a right to terminate without cause, although we do not hold so expressly.[3] Two Florida cases lead us in that direction. The first is DeMarco v. Publix Super Markets, Inc., 384 So.2d 1253, 1254 (Fla. 1980), wherein the supreme court approved and quoted the following language from the opinion of the Third District Court of Appeal that was being reviewed:
"[W]here the term of employment is discretionary with either party or indefinite, then either party for any reason may terminate it at any time and no action may be maintained for breach of the employment contract."
The second is the decision of the Second District Court of Appeal in Pick Kwik Food Stores, Inc. v. Tenser, 407 So.2d 216, 218 (Fla. 2d DCA 1981), in which it held:
[T]he executory features of the contract were void from the beginning for lack of consideration or, as the rule is sometimes expressed, for lack of mutuality.
... If one party has the unrestricted right to terminate the contract at any time, that party makes no promise at all and there is not sufficient consideration for the promise of the other.
It should be borne in mind that in DeMarco, Pick Kwik, and all the authorities upon which the latter decision relies the claims were based upon a refusal of one party to carry on with the contract: one of the parties reserved the right to cancel and did so and the other sought relief based on some executory theory resulting from the cancellation. The courts all held the cancellation cut-off relief, thus they denied same. We only mention this because legal principles arise out of factual contexts and the actions bred thereby and bilateral executory contracts characteristically, but not necessarily, seem to involve the type of claim just mentioned.
Nevertheless, we will disregard the foregoing concern over mutual obligation at the inception of the agreement for two reasons. One may appear to be a thin reed, but the other is determinative. First, the obligation on appellant's part to give written notice of termination can be held to be the consideration eliminating the need for mutual obligation. In Mangus v. Present, *627 135 So.2d 417, 418 (Fla. 1961), the supreme court said:
In Henderson v. Kendrick, supra [82 Fla. 110, 89 So. 635, 637], we held, "The detriment which will constitute a consideration for a promise need not be an actual loss to the promisee. It is sufficient if he does something that he is not legally bound to do."
In the absence of the parties' agreement, appellant was not bound to provide appellee with written notice. The requirement that it do so can be held to be sufficient consideration to support the promise of the other party. It is stated in 1 S. Williston, A Treatise on the Law of Contracts § 105, at 418-19 (3d ed. 1957):
An agreement wherein one party reserves the right to cancel at his pleasure cannot create a contract.
Since the courts, however, do not favor arbitrary cancellation clauses, the tendency is to interpret even a slight restriction on the exercise of the right of cancellation as constituting such legal detriment as will satisfy the requirement of sufficient consideration; for example, where the reservation of right to cancel is for cause, or by written notice, or after a definite period of notice, or upon the occurrence of some extrinsic event, or is based on some other objective standard.
(Footnotes omitted.) See also 17 C.J.S. Contracts § 100(6) (1963).
Second, and more important, is the rule stated in 17 C.J.S. Contracts § 100(3), at 799-800 (1963):
Although a contract is lacking in mutuality at its inception, such defect may be cured by the subsequent conduct of the parties. Want of mutuality is no defense in the case of an executed contract, and a promise lacking mutuality at its inception becomes binding on the promisor after performance by the promisee.
(Footnotes omitted.) Not only does Florida follow that rule, Russell v. Martin, 88 So.2d 315 (Fla. 1956); Sanchez v. Crandon Wholesale Drug Co., 173 So.2d 687 (Fla. 1965), adopting Florida-Georgia Chemical Co. v. National Laboratories, Inc., 153 So.2d 752 (Fla. 1st DCA 1963), but it is applicable under the circumstances of this case.
If appellant continued to employ appellee, the latter promised that upon termination of his employment he would not compete with appellant. Even if we were to assume  and for the sake of discussion we do because appellant retained the right to cancel the agreement  an absence of mutuality of obligation at the inception and for the executory portion of the agreement, appellant completely performed its obligations to continue to employ and pay appellee for his services from the commencement date through April 16, 1980. On that date  with only two weeks remaining on the one year term expressed in the agreement  appellee attempted to repudiate the agreement as being void for a variety of legal reasons and, contradictorily, unilaterally and cavalierly informed his employer that his employment would continue for two more weeks.[4]
Faced with the letter of repudiation, appellant properly made April 16, 1980, the effective date of the termination of appellee's employment rather than acquiescing to the inconsistencies in appellee's announcement. If appellant did not perform for the entire year, it was only because appellee made it impossible for appellant to do so. Under such circumstances there was complete performance by appellant of what it had promised to do in exchange for appellee's promise not to compete; as a result appellee's promise not to compete became binding upon him and enforceable by injunction.[5]

*628 II
Additional reasons for enforcing appellee's covenant not to compete have been noted in at least three decisions applying Florida law. Tasty Box Lunch Co. v. Kennedy, 121 So.2d 52, 54 (Fla. 3d DCA 1960), said:
Inasmuch as the employment was a continuing contract terminable at the will of the employer or the employee, the continued employment and agreement to pay commissions was consideration for the employee's agreement not to compete.[6]
The foregoing language was quoted with approval in McQuown v. Lakeland Window Cleaning Co., 136 So.2d 370, 371-72 (Fla. 2d DCA 1962). Finally, in Dickinson v. Auto Center Manufacturing Co., 639 F.2d 250, 253 (5th Cir.1981), the court said:
[I]t is clear that in Florida the primary element of consideration essential to formation of a contract, see, e.g., Frissell v. Nichols, 94 Fla. 403, 114 So. 431 (1927), is satisfied when any act of a plaintiff from which a defendant derives benefit, or by any labor, detriment, or inconvenience sustained by a plaintiff at either defendant's express or implied consent is present. Tampa Northern R.R. Co. v. City of Tampa, 104 Fla. 481, 485, 140 So. 311, 313 (1932). Moreover, the detriment which may be found to constitute adequate consideration for a promise need not be an actual loss to the promisor and may be based on either the express or implied consent of the promisee.
The Florida Courts' application of these principles have been broad and have often been utilized to interpret employment contracts. Indeed, particularly where employment was a continuing contract terminable at the will of either the employer or employee, the Florida Courts have held continued employment constitutes adequate consideration to support a contract. Tasty Box Lunch Co. v. Kennedy, 121 So.2d 52, 54 (Fla.App. 1960).
It concerns us that none of these three cases contains an in depth analysis of the question of mutual obligation because, as we remarked earlier, legal principles evolve from factual contexts.
Let us assume in the present case that immediately after appellee appended his name to the parties' employment agreement, appellant delivered to him then and there a written notice that his employment was forthwith terminated without cause; or that this same notice was delivered to him one day, one week, or one month after employment had continued pursuant to the agreement, in which period no trade secrets became known to appellee. Would appellee be bound by his covenant or was the "promise" of continued employment only illusory? Accordingly, we are troubled by the phrase "terminable at will" that is employed in the three opinions in the absence of supportive analysis. Nevertheless, they represent the governing law in Florida on which employers and employees have relied for over twenty years and appellee has not provided us with argument sufficiently persuasive to disregard them. Here, although the relationship between the parties was terminable at will, their agreement required written notice. But most important and determinative, appellant employed appellee for eleven months and sixteen days in reliance upon his promise not to compete; their relationship would have lasted the entire year but for appellee's attempted repudiation.

III
Turning to a totally different point, appellee argues only appellant's notice of termination of employment actuated the covenant not to compete; since it was he who terminated their relationship, not appellant, the covenant never became operative. He derives this argument from the phrase "termination of his employment by the Company" in the agreement. We disagree with his interpretation. It is plain to *629 us that the phrase "by the Company" in the following clause of the agreement refers to "employment," not to "termination":
Therefore, Employee agrees that during his employment by the Company and for a period of three years following the termination of his employment by the Company. ...
(Emphasis supplied.)
The italicized phrase appears five times in paragraph FOURTH. It simply violates good sense to interpret the phrase four times as it appears, but on the fifth, critical occasion as if it only read "employment," with the remainder of the phrase "by the Company" referring to the word "termination." Numerous rules of construction preclude such a stilted reading. First, when ambiguous language "is susceptible of two constructions, the court will approve that construction which comports with logic and reason." Baker & Co., Florida v. Goding, 317 So.2d 118, 119 (Fla. 3d DCA 1975). Second, as stated in Bay Management, Inc. v. Beau Monde, Inc., 366 So.2d 788, 791 (Fla. 2d DCA 1978):
In construing a contract the court must consider the objects to be accomplished, and to this end should place itself in the position of the parties when the contract was entered into... . A corollary to this is that the court should arrive at an interpretation consistent with reason, probability, and the practical aspect of the transaction between the parties... .
(Citations omitted.) Third, a "contract should not be interpreted so as to render its operation inequitable as to either [of its] part[ies]." Comwel Development Corp. v. City of Deerfield Beach, 382 So.2d 716, 718 (Fla. 4th DCA 1980). Fourth, grammatical construction of contracts generally requires that a relative or qualifying phrase be construed as referring to its nearest antecedent. 17A C.J.S. Contracts § 305 (1963). By applying the foregoing rules, it follows that in this case it is immaterial who terminated employment inasmuch as the covenant was actuated in either instance.

IV
We further conclude the facts of this case would not support a finding of overreaching or coercion. The employer clearly had a legal right to include in the agreement a covenant not to compete as evinced by sections 542.12(1) and (2)(a).[7] In sanctioning anti-competition provisions, the Legislature undoubtedly considered that one of the bargaining parties would always be the employer and that the economic position of the employer generally would be superior to that of the employee. As was said in Tasty Box Lunch Co.:
To hold that the agreement is unenforceable because the bargaining parties were not on equal terms would void nearly all such agreements and this would defeat the purpose of the statute.
Id. at 54. Further, any so-called harshness of a covenant not to compete disregards the consideration flowing to the employee. Accordingly, the issues of overreaching, coercion, and harsh result merely because of the per se existence of a covenant have been put to rest.
Nevertheless, our having reversed, on remand the trial court must determine the issue of reasonableness of time and area and fashion an injunction in an appropriate manner. Having expressed our intent, the trial court is directed to proceed in accordance therewith.
HERSEY, J., and DANIEL S. PEARSON, Associate Judge, concur.
NOTES
[1] Paragraph FOURTH A of the employment agreement provided:

The Company is engaged throughout the State of Florida in the business of a general property, liability and life insurance agency (the "Business of the Company"). Employee acknowledges that the loss of his services or the use of his services by a competitor would cause irreparable harm to the Company; and Employee agrees that he possesses knowledge, skills and a reputation in the Business of the Company which are, and will be, of substantial importance to the Business of the Company and which are special and unique. Therefore, Employee agrees that during his employment by the Company and for a period of three years following the termination of his employment by the Company (including the expiration and non-renewal of the Agreement) he will not (1) directly or indirectly, as a principal, officer, director, stockholder (except as the owner of less than five percent of the stock of a company, the stock of which is publicly traded), partner employee or in any other capacity whatsoever, without the prior written consent of the Company, engage in, or be or become asosciated [sic] with, or advise or assist any business, firm, partnership, individual, corporation or any other entity which is engaged in, any business or activity which is similar to or in any way competitive with the Business of the Company, its successors or assigns, in the following counties in the State of Florida: Broward, Palm Beach and Martin; or (2) solicit any customers or items of business of the Company, wherever located, that were on the books of the Company at any time during his employment by the Company.
Pursuant to sections 542.12(1) and (2)(a), Florida Statutes (1979), covenants not to compete were enforceable when appellant filed the present suit. The statute provides:
(1) Every contract by which anyone is restrained from exercising a lawful profession, trade or business of any kind, otherwise than is provided by subsections (2) and (3) hereof, is to that extent void.
(2)(a) One who sells the goodwill of a business, or any shareholder of a corporation selling or otherwise disposing of all of his shares in said corporation, may agree with the buyer, and one who is employed as an agent or employee may agree with his employer, to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer within a reasonably limited time and area, so long as the buyer or any person deriving title to the goodwill from him, and so long as such employer continues to carry on a like business therein. Said agreements may, in the discretion of a court of competent jurisdiction, be enforced by injunction.
The Legislature transferred the foregoing section, effective October 1, 1980, to chapter 542, where it became part of the Florida Antitrust Act of 1980 as section 542.33, Florida Statutes (Supp. 1980).
[2] The absence of mutuality of remedies would not destroy the agreement's validity. As this court said in Bossert v. Palm Beach County Comprehensive Community Mental Health Center, Inc., 404 So.2d 1138, 1139 (Fla. 4th DCA 1981):

The legal principle requiring mutuality in contracts does not require that in every case each party have the same remedy.
See also Thompson v. Shell Petroleum Corp., 130 Fla. 652, 178 So. 413 (1938); Bacon v. Karr, 139 So.2d 166 (Fla. 2d DCA 1962). Appellee clearly could have brought an action against appellant based on the agreement if appellant had failed to pay him for his services. Merely because appellant was able to seek an injunction to prevent appellee from violating the covenant and appellee lacked a corresponding remedy did not affect the reciprocal duties of the parties.
[3] See the discussion in Part II of this opinion.
[4] After having informed appellant that their agreement was totally void, we are at a loss to understand on what basis appellee felt he would be kept on the payroll for the two weeks.
[5] For future similar cases we cannot help but mention that the issue of mutuality may or may not have been timely raised, however, this was neither made an issue nor considered in this appeal. In Weiss v. Duro Chrome Corp., 207 F.2d 298, 300 (8th Cir.1953), the court said:

The contract here involved has been fully performed and it is too late now to attempt to plead want of mutuality.
[6] Cases from other jurisdictions related to the sufficiency of consideration for an employee's covenant not to compete after commencement of his employment are collected in Annot., 51 A.L.R.3d 825 (1973).
[7] See supra note 1.