423 So.2d 988 (1982)
CITY OF SOUTH MIAMI, Appellant,
v.
Stephen L. DEMBINSKY, Appellee.
No. 81-2720.
District Court of Appeal of Florida, Third District.
December 28, 1982.
*989 Gus Efthimiou, Jr., Miami, for appellant.
Rash, Katzen, Kay & Pintado and Stephen H. Rash, South Miami, for appellee.
Before HENDRY, SCHWARTZ and DANIEL S. PEARSON, JJ.
SCHWARTZ, Judge.
The appellee Dembinsky is a former South Miami police officer. His service began on November 22, 1978, when the city agreed to enroll him for training in the Southeast Institute of Criminal Justice, commonly known as the Police Academy. While he was there, on April 20, 1979, the city presented him with and he executed a so-called Cost of Training Agreement under which he promised that he would reimburse it for his academy expenses if he voluntarily left the force within two years of his employment. At that time, and for the first six months after graduation, Dembinsky  like all South Miami police officers  was on probationary status, subject to dismissal at the will of the city. Dembinsky left the city on his own within the two-year period on May 4, 1980 and thereafter sued South Miami for unpaid salary and benefits. The city answered admitting that some monies were due and raised the issue involved in this appeal by counterclaiming for the police academy charges under the Cost of Training Agreement. On Dembinsky's motion, the trial court held that the agreement was unenforceable for lack of consideration and entered summary judgment for the plaintiff for the amount of $2,250.31 in unpaid compensation plus interest.[1] We reverse.
We do so on the ground that the city's continued employment of Dembinsky after the agreement, despite its admitted right then and for more than six months thereafter to fire him if he refused to execute it or for any other reason, rendered his promise of reimbursement an enforceable one. It is of course the general rule that declining or failing to exercise a legal right to take action adverse to the promisor  in a word, forbearance  constitutes valid consideration for an agreement which benefits the promisee. Boymer v. Birmelin, 227 So.2d 358 (Fla. 3d DCA 1969), cert. denied, 237 So.2d 537 (Fla. 1970) and cases cited; City of Valparaiso v. Long, 141 So.2d 334 (Fla. 1st DCA 1962). This principle has been often and recently applied to the very situation involved here. In Wright v. Seaton, Inc. v. Prescott, 420 So.2d 623 (Fla. 4th DCA 1982), the court held that continued employment notwithstanding the ability to discharge the employee at will was sufficient to render enforceable a covenant not to compete which was executed after the employee had been initially hired. In support of this conclusion, it was said
[M]ore important is the rule stated in 17 C.J.S. Contracts § 100(3), at 799-800 (1963):
Although a contract is lacking in mutuality at its inception, such defect may be cured by the subsequent conduct of the parties. Want of mutuality is no defense in the case of an executed contract, and a promise lacking mutuality at its inception becomes binding on the promisor after performance by the promisee.
(Footnotes omitted.) Not only does Florida follow that rule, Russell v. Martin, 88 So.2d 315 (Fla. 1956); Sanchez v. Crandon Wholesale Drug Co., 173 So.2d 687 (Fla. 1956), adopting Florida-Georgia Chemical Co. v. National Laboratories, Inc., 153 So.2d 752 (Fla. 1st DCA 1963), but it is *990 applicable under the circumstances of this case.
If appellant continued to employ appellee, the latter promised that upon termination of his employment he would not compete with appellant. Even if we were to assume  and for the sake of discussion we do because appellant retained the right to cancel the agreement  an absence of mutuality of obligation at the inception and for the executory portion of the agreement, appellant completely performed its obligations to continue to employ and pay appellee for his services from the commencement date through April 16, 1980.
* * * * * *

Tasty Box Lunch Co. v. Kennedy, 121 So.2d 52, 54 (Fla. 3d DCA 1960), said:
Inasmuch as the employment was a continuing contract terminable at the will of the employer or the employee, the continued employment and agreement to pay commissions was consideration for the employee's agreement not to compete.
The foregoing language was quoted with approval in McQuown v. Lakeland Window Cleaning Co., 136 So.2d 370, 371-72 (Fla. 2d DCA 1962). Finally, in Dickinson v. Auto Center Manufacturing Co., 639 F.2d 250, 253 (5th Cir.1981), the court said:
[I]t is clear that in Florida the primary element of consideration essential to formation of a contract, see, e.g., Frissell v. Nichols, 94 Fla. 403, 114 So. 431 (1927), is satisfied when any act of a plaintiff from which a defendant derives benefit, or by any labor, detriment, or inconvenience sustained by a plaintiff at either defendant's express or implied consent is present. Tampa Northern R.R. Co. v. City of Tampa, 104 Fla. 481, 485, 140 So. 311, 313 (1932). Moreover, the detriment which may be found to constitute adequate consideration for a promise need not be an actual loss to the promisor and may be based on either the express or implied consent of the promisee.
The Florida Courts' application of these principles have been broad and have often been utilized to interpret employment contracts. Indeed, particularly where employment was a continuing contract terminable at the will of either the employer or employee, the Florida Courts have held continued employment constitutes adequate consideration to support a contract. Tasty Box Lunch Co. v. Kennedy, 121 So.2d 52, 54 (Fla.App. 1960).
420 So.2d at 627, 628.
The Prescott and Tasty Box cases are directly, in fact a fortiori, applicable to this one. While the validity of the Prescott holding might have been subject to question if  as did not occur  the employer had itself subsequently fired the employee and then nevertheless attempted to enforce the non-compete agreement,[2] no such result could ever occur here. This is because Dembinsky's promise was a conditional one which would become, and in the event became, enforceable only if he quit before the city got value for its training money in the form of two years of his services. If South Miami had fired him, he simply would not owe it the money. Consequently, there is even less reason than in Prescott to be concerned about the absence of "an in depth analysis of the question of mutual obligation," 420 So.2d at 628, in the prior cases, much less to undertake one ourselves. We are content merely to follow and apply to the facts before us the well-established and, we think, well-justified principles enunciated by those authorities.
*991 Finally, we note our agreement with the appellee that there is no evidence that the consideration we find for Dembinsky's promise was in fact overtly bargained for; that is, he was never told either that his promise was being exacted in return for the city's undertaking to continue his employment, or that he would be discharged if he did not sign. This makes no difference, however, because in this context at least, there is no such requirement. Dickinson v. Auto Center Manufacturing Co., 639 F.2d 250 (5th Cir.1981); Wright & Seaton, Inc. v. Prescott, supra; Tasty Box Lunch Co. v. Kennedy, 121 So.2d 52 (Fla. 3d DCA 1960); Hogan v. Bergen Brunswig Corp., 153 N.J. Super. 37, 378 A.2d 1164, 1167 (1977), and cases cited. See Restatement of Contracts § 84(a) (1932).[3]
For these reasons, the judgment below is reversed and the cause remanded for further proceedings consistent herewith.
Reversed.
NOTES
[1] The city does not dispute the correctness of this amount.
[2] The Prescott court expressed that concern as follows:

Let us assume in the present case that immediately after appellee appended his name to the parties' employment agreement, appellant delivered to him then and there a written notice that his employment was forthwith terminated without cause; or that this same notice was delivered to him one day, one week, or one month after employment had continued pursuant to the agreement, in which period no trade secrets became known to appellee. Would appellee be bound by his covenant or was the `promise' of continued employment only illusory? Accordingly, we are troubled by the phrase `terminable at will' that is employed in the three opinions in the absence of supportive analysis.
420 So.2d at 628.
[3] Dipping our toes only gingerly into the great sea of theoretical controversy on this question, we observe that the class of cases which involve, as here, a promise which may be initially lacking in mutuality but which becomes binding after performance by the promisee, does not fit within Justice Holmes' view that consideration must be "given and accepted as the motive or inducement of the promise." Holmes, The Common Law 293 (1923). See generally, 1 A. Corbin on Contracts, §§ 118 et seq. (1963). Another conceptual basis for the consideration requirement must be formulated if the jurisprudential theory of the matter is to coincide with what the law actually is. But see Corbin, supra, § 109.