810 F.2d 1529
 7 Fed.R.Serv.3d 295
 Caryl Antony Vaughn GIBBS, and other underwriters, etc.,
Plaintiff-Cross- Appellee,
v.
AIR CANADA, Defendant-Third Party Plaintiff-Appellee, Cross-Appellant,
Aircraft Services, Inc., Third Party Defendant-Appellant.
 No. 85-5736.
 United States Court of Appeals,
Eleventh Circuit.
 Feb. 26, 1987.
Rehearing and Rehearing En Banc Denied April 2, 1987.
 
 Richard R. McCormack, Miami, Fla., for Aircraft Services.
 Timothy Armstrong, Armstrong & Meyer, Coral Gables, Fla., David A. Russell, Walters, Costanzo, Russell, Zyne & Newman, Miami, Fla., for Gibbs.
 Richard Gale, Miami, Fla., for Air Canada.
 Appeals from the United States District Court for the Southern District of Florida.
 Before JOHNSON and ANDERSON, Circuit Judges, and GARZA*, Senior Circuit Judge.
 JOHNSON, Circuit Judge:
 
 
 1
 Appellant, Aircraft Services, Inc. ("Aircraft Services"), appeals the grant of a motion for directed verdict in favor of Air Canada as third party plaintiff below on an indemnity agreement and the denial of its own motion for directed verdict or, in the alternative, for a new trial. Air Canada cross-appeals the denial of its motion to vacate default judgment with regard to its liability to Caryl Antony Vaughn Gibbs and the other Underwriters at Lloyds subscribing to Insurance Policy Binder No. MK00135 ("Gibbs"), plaintiffs below. We reverse the grant of Air Canada's motion for directed verdict and the denial of Aircraft Services' motion for directed verdict. We affirm the denial of Air Canada's motion to vacate the default judgment with regard to liability.
 
 I. BACKGROUND
 
 2
 On August 16, 1971, Aircraft Services entered a contract with Air Canada to provide various ramp services for Air Canada at the Miami International Airport ("Contract"). The services to be provided were listed on a schedule attached to the Contract. Beginning in January 1980, those services included transportation of cargo between Air Canada's cargo warehouse and its terminal ramp area. The Contract contained a provision pursuant to which Aircraft Services agreed to indemnify Air Canada for damages caused by the negligence or willful misconduct of its authorized representatives, agents or employees.
 
 
 3
 On March 6, 1980, Johnnie Sorey, a truck driver employed by Aircraft Services, picked up Air Canada shipping containers at the Air Canada warehouse and drove them to the Air Canada ramp for loading aboard an incoming flight. In one of the containers was $790,870.23 worth of precious metal belonging to Gibbs' insured, Trend Coin Co., d/b/a Trendline & Precious Metal Brokers, Inc. Because of the value of the shipment, Air Canada employee Phil Scandiarato followed Sorey's truck from the warehouse to the airport. He had informed Sorey that the shipment contained valuable cargo.
 
 
 4
 Upon arrival at the Air Canada terminal, the containers were unloaded onto the ramp by Sorey and another Aircraft Services employee with the aid of a forklift. Scandiarato informed P.J. Morris, the Air Canada Ramp Supervisor, and Dennis Lurchbacker, another Air Canada employee, that there was a valuable shipment on the ramp. Under Air Canada's procedures, Morris was then responsible for security with regard to the cargo until it was loaded on the airplane. He did not guard the cargo, however, because of problems with another flight, and he did not assign that responsibility to another employee.
 
 
 5
 Upon unloading the containers, Sorey's duties with regard to the shipment were completed and he should have returned to the Air Canada warehouse for another load. Instead, he called an accomplice from the Air Canada terminal office, reloaded the container containing the precious metal on his truck, and drove to his accomplice's house in Ocala, Florida. There was no one present on the ramp at the time Sorey stole the container. Providing security for this cargo at the terminal was not one of Aircraft Services' duties under the Contract.
 
 
 6
 Gibbs paid his insured for the loss, and filed suit against Air Canada, alleging, inter alia, gross negligence and willful misconduct on the part of Air Canada. The summons and complaint were served on John Lemay, Air Canada's Personnel and Administration Manager for the Southeastern United States, on April 6, 1981. Lemay telephoned Patrick Saul, the solicitor in charge of administration and control of litigation and claims at Air Canada's legal department in Montreal, Canada. Saul was out of the office and Lemay left a message with Saul's secretary for Saul to call him. Saul never returned the call and Lemay never followed up on his first telephone call to Saul. Instead, on April 8, 1981, Lemay forwarded the complaint to Saul via company mail. Saul never received the complaint.
 
 
 7
 On May 8 and again on June 8, 1981, entries of default were made by the clerk of court because of Air Canada's failure to answer or otherwise defend. On December 9, 1981, the district court granted judgment by default in the amount of $790,870.23. Air Canada learned of this judgment January 27, 1982, when Saul received a letter from Gibbs' counsel requesting satisfaction of the judgment. On February 12, 1982, Air Canada filed a motion to set aside the default judgment for excusable neglect pursuant to Fed.R.Civ.P. 60(b)(1). On April 24, 1982, the district court set aside the default judgment with regard to damages, but denied the Rule 60(b) motion with regard to liability because the court found that Air Canada's failure to answer the complaint was caused by its lack of minimum procedural safeguards.
 
 
 8
 Air Canada then filed a third party complaint against Aircraft Services seeking contractual indemnification.[1] A jury trial was held on the damages issue and a jury verdict for $790,870.23 was returned in favor of Gibbs against Air Canada. Aircraft Services participated in this trial. A two day jury trial then was held with regard to the third party complaint and the district court granted a directed verdict in favor of Air Canada at the close of all the evidence. On July 25, 1985, final judgment in the amount of $1,182,271.74 ($790,870.23 principal plus $391,401.51 in prejudgment interest) was entered in favor of Gibbs against Air Canada and in favor of Air Canada against Aircraft Services. On August 26, 1985, the district court denied Aircraft Services' motions for directed verdict, new trial and to alter or amend the judgment, and this appeal followed. Air Canada cross-appealed with regard to the December 9, 1981 default judgment, the April 24, 1982 order denying Air Canada's motion to set aside default judgment with regard to liability, and the entry of final judgment against Air Canada in favor of Gibbs.
 
 II. DISCUSSION
 
 9
 A. Grant of Air Canada's Motion for a Directed Verdict
 
 1. Standard of Review
 
 10
 The standard of review with regard to the grant of a directed verdict is whether "viewing all the evidence in the light most favorable to the non-moving party, the facts and inferences point so strongly in favor of one party that reasonable persons could not decide against the movant." Cook v. Branick Mfg., Inc., 736 F.2d 1442, 1445 (11th Cir.1984). In the present case, the district court's directed verdict in favor of Air Canada was based on its interpretation of the language of the indemnity provision of the Contract. Contract interpretation is generally a question of law subject to de novo review on appeal. Brewer v. Muscle Shoals Bd. of Education, 790 F.2d 1515, 1519 (11th Cir.1986).
 
 
 11
 2. Interpretation of the Scope of the Indemnity Provision
 
 
 12
 The district court found that the language of the indemnity provision evidenced an intent to cover Sorey's act in stealing the container. Aircraft Services argues that its liability under the indemnity clause should not exceed its liability under the Florida law[2] of respondeat superior, pursuant to which an employer is not liable for the tort of his employee if the employee was acting in furtherance of his own personal interests, rather than his employer's interests, and thus has "stepped away" from the employer's business at the time of the tort. Lay v. Roux Laboratories, Inc., 379 So.2d 451, 453 (Fla.App.1980); accord, Gonpere Corp. v. Rebull, 440 So.2d 1307, 1308 (Fla.App.1983). Although whether one is acting within the scope of his employment normally is a jury question, Lay, 379 So.2d at 453, it is clear in this case that Sorey's act in stealing the container was in furtherance of his own personal interests and that, therefore, Aircraft Services has no vicarious tort liability for his actions under Florida respondeat superior principles. Air Canada's theory of recovery, however, was not respondeat superior, but a contractual right to indemnification for claims caused by negligence or willful misconduct of Aircraft Services employees.[3]
 
 
 13
 Under Florida law, construction of a contract of indemnity generally is a question of law for the court applying recognized rules of contract construction. Improved Benevolent & Protected Order of Elks of the World, Inc. v. Delano, 308 So.2d 615, 617 (Fla.App.1975). Thus, the district court's task at trial, and our own task on this appeal, is to determine the intent of the parties with regard to the scope of the indemnification provision from the language of the Contract and the circumstances under which it was made. See id. In determining this intent, contract provisions should be given their natural and most commonly understood meaning in light of the subject matter and circumstances, Baker & Co., Florida v. Goding, 317 So.2d 118, 119 (Fla.App.1975), cert. denied, 328 So.2d 840 (Fla.1976), and the language being construed should be read in common with the other provisions of the contract. American Employers' Insurance Co. v. Taylor, 476 So.2d 281, 283 (Fla.App.), cause dismissed, 485 So.2d 426 (Fla.1985).
 
 
 14
 Based on our application of the above principles, we find that the district court erred in its determination that the indemnity clause of the Contract covered Sorey's conduct. Article I of the Contract describes the extent of Aircraft Services' liability under the Contract as follows:
 
 
 15
 Service, Inc. does not assume any liability for damages caused by or resulting from directly or indirectly, wholly or in part, any failure or fault, other than negligence or willful misconduct, in furnishing or omitting to furnish services under this Agreement.
 
 
 16
 (emphasis added). The indemnification provision states that:
 
 
 17
 Service, Inc. agrees to indemnify and hold Air Canada harmless from and against all actions, claims and other proceedings arising out of injury or damage caused by the negligence or willful misconduct of Service, Inc., its authorized representatives, agents or employees to the Carrier's passengers and shippers and their property.
 
 
 18
 (emphasis added). Reading the liability and indemnification provisions of this Contract together, it is clear that the Contract only indemnifies Air Canada for negligence or willful misconduct of Aircraft Services employees "in furnishing or omitting to furnish services" under the Contract. The plain meaning of "in furnishing or omitting to furnish services" clearly shows an intent that the injury or damage giving rise to the claim for which indemnity is sought must bear a causal relationship to the performance of, or failure to perform, Aircraft Services' obligations under the Contract. Sorey's conduct did not occur during the furnishing of services under the Contract. He had finished performing his services when he unloaded the containers at Air Canada's terminal. Further, Air Canada does not deny that Aircraft Services had no duty to provide security for cargo that had been unloaded on the ramp. Therefore, the theft cannot be said to be caused by Aircraft Services' failure to perform services under the Contract. Thus, Sorey's theft of the container does not come within the scope of the indemnification provision and the district court erred in granting Air Canada's motion for a directed verdict and denying the directed verdict motion of Aircraft Services.
 
 
 19
 B. Indemnification for Air Canada's Own Wrongful Conduct
 
 
 20
 Further, even if the indemnification provision did cover activity such as Sorey's theft of the container, a directed verdict in favor of Aircraft Services still was required because Air Canada's own wrongful conduct was a legal cause of the loss for which it sought indemnification. Gibbs' complaint against Air Canada alleged that Air Canada was guilty of gross negligence and willful misconduct in failing to take necessary measures "to ensure the safety, security and proper delivery of Trendline's precious metal cargo" and in breaching its duty as a bailee to exercise due care with regard to the cargo by allowing it to be stolen while in its custody and control. Gibbs' complaint further alleged that Air Canada's gross negligence and willful misconduct were the legal cause of the loss of the cargo. It is clear that these allegations were assertions of active negligence on the part of Air Canada and not merely assertions of vicarious liability for Sorey's actions. Based upon the default judgment entered against Air Canada, the district court found in the main action between Gibbs and Air Canada that it was established on the record that Air Canada was guilty of gross negligence and willful misconduct as alleged in Gibbs' complaint.[4] As the district court noted in its Memorandum Opinion filed in connection with its entry of final judgment, this finding of gross negligence on the part of Air Canada was necessary to support a judgment in favor of Gibbs for the full value of the precious metal. Otherwise, Gibbs' claim would have been subject to the limitation on liability contained in Article 22(2) of the Warsaw Convention[5], for, on the facts of this case, that limitation would apply unless Gibbs established that Air Canada was guilty of gross negligence or willful misconduct. Warsaw Convention, Article 25(1).[6]
 
 
 21
 Under Florida law, agreements to indemnify parties against their own wrongful acts are not favored and will be enforced only if they express such an intent in clear and unequivocal terms. Charles Poe Masonry, Inc. v. Spring Lock Scaffolding Rental Equip. Co., 374 So.2d 487, 489 (Fla.1979); accord, Mitchell Maintenance Systems, Div. of Lift-A-Loft Corp. v. State Dept. of Transp., 442 So.2d 276, 278 (Fla.App.1983). In the absence of such a clear and unequivocal contractual expression of intent, any fault of the indemnitee that is a legal cause of its own loss will negate the contractual indemnitor's obligation. Hoskins v. Midland Insurance Co., 395 So.2d 1159, 1160 (Fla.App.), cert. denied, 407 So.2d 1104 (Fla.1981); accord, Charles Poe Masonry, 374 So.2d at 489-90.
 
 
 22
 Air Canada argues that the finding of gross negligence and willful misconduct in the main action does not defeat its right to contractual indemnification because (1) it is not bound by that finding in its action against Aircraft Services and (2) even if it is bound by that finding, the Contract does evidence a clear intent to indemnify Air Canada against its own negligence.
 
 
 23
 1. Preclusive Effect of Findings in the Main Action
 
 
 24
 Federal law governs the res judicata effect of a prior judgment in a diversity action in a subsequent diversity case. Aerojet-General Corp. v. Askew, 511 F.2d 710, 716 (5th Cir.1975), cert. denied sub nom. Metropolitan Dade County v. Aerojet-General Corp., 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1985). The general rule with regard to the preclusive effect of findings made in connection with a judgment for which contractual indemnity is sought is that an indemnitee is bound in an action against the indemnitor by all findings without which the original judgment against him could not have been rendered. Warren Petroleum Corp. v. J.W. Green Contractors, 417 F.2d 242, 245-46 (5th Cir.1969); accord, Maritime Overseas Corp. v. Northeast Petroleum Indus., Inc., 706 F.2d 349, 351 (1st Cir.1983); Annotation, Indemnity--Conclusiveness of Judgment, 24 A.L.R.2d 329, 330 (1952).[7] Therefore, if the earlier judgment rests on a fact fatal to recovery in the action over against the indemnitor, the latter action cannot be successfully maintained. 24 A.L.R.2d at 330.
 
 
 25
 Air Canada argues, however, that it should not be bound by the findings of gross negligence and willful misconduct in the Gibbs action because the judgment in that action was by default. It argues that, while a default judgment should have the res judicata effect of conclusiveness between the parties and their privies in a subsequent suit on the same cause of action, the better view is that it should not be given collateral estoppel effect in another cause of action. See Matter of McMillan, 579 F.2d 289, 292-93 (3rd Cir.1978) (refusing to give collateral estoppel effect to default judgment because issues were not actually litigated and noting that preponderant view is that default judgment has no collateral estoppel effect); 1B Moore's Federal Practice 0.444, at 798 (1984) (better view is that, as general proposition, default judgment should have no collateral estoppel effect).
 
 
 26
 The arguments in favor of the view that default judgments should not be given collateral estoppel effect are that (1) to do so misconceives the nature of a default judgment, which "only admits for the purpose of the action the legality of the demand or claim in suit" and "does not make the allegations of the ... complaint evidence in an action upon a different claim", id. at 798 & n. 7 (quoting Cromwell v. County of Sac, 94 U.S. (4 Otto) 351, 356, 24 L.Ed. 195 (1877), (2) the defendant should not be compelled to defend a suit which he otherwise would choose not to defend because of fear of its effect on future litigation, id. at 798, and (3) application of collateral estoppel in a default situation is unjust if it cannot be said that the parties could have reasonably foreseen the conclusive effect of their actions. Id. 0.444, at 794.
 
 
 27
 Whatever may be the merits of these arguments with regard to the applicability of general collateral estoppel principles, we find them unpersuasive in the context of this case. The rule that an indemnitee is bound by the facts necessary to support the original judgment against him is not based on general preclusion principles, but rather on the fact that the indemnitee himself relies on the earlier judgment against him as the basis for his right to recover from the indemnitor and, therefore, must take for better or worse the adjudicated facts on which it rests. American Surety Co. v. Singer Sewing Machine Co., 18 F.Supp. 750, 754 (S.D.N.Y.1937) (finding made in connection with default judgment held binding); accord, 24 A.L.R. at 332. Cf. Alabama Title & Trust Co. v. Millsap, 71 F.2d 518, 520 (5th Cir.1934) ("Plaintiff, having rested his case on [a prior judgment], may not deny that the recital in it ... binds him."); Meredith v. City of North Miami, 145 F.2d 485, 487 (5th Cir.1944) (party seeking to interpose a decree as a defense to an action against him is bound by its terms and provisions although he was not a party to the decree). That rationale is just as applicable when the judgment is one by default as when the issues have been fully litigated. Air Canada's claim for indemnity is based on the existence of the judgment in Gibbs' favor, which could not stand without the finding of gross negligence or willful misconduct on the part of Air Canada. Therefore, we find that Air Canada is bound by that finding in its indemnification action against Aircraft Services.
 
 
 28
 2. Clear and Unequivocal Intent to Indemnify Against Indemnitee's Negligence
 
 
 29
 Further, we find that the Contract does not express a clear and unequivocal intent to indemnify Air Canada against its own negligence or willful misconduct. The indemnity provision itself clearly does not indicate such an intent. Cf. Charles Poe Masonry, 374 So.2d at 489 (general indemnity language is insufficient to indicate intent to indemnify against indemnitee's own negligence). Air Canada argues, however, that such an unequivocal intent is shown in this case by the language of the indemnification provision when read in conjunction with the liability provision. The liability provision provides that "Service Inc. does not assume any liability for damages caused by or resulting from directly or indirectly, wholly or in part, any failure or fault other than negligence or willful misconduct, in furnishing or omitting to furnish services under this agreement." (emphasis added). Air Canada reads this provision as indicating that Aircraft Services does assume liability for damages caused "wholly or in part" by its negligence or willful misconduct. It then argues that, when this liability provision is read in conjunction with Aircraft Services' agreement to indemnify Air Canada for Aircraft Services' negligence and willful misconduct, the Contract shows a clear intent to indemnify Air Canada in a case where Aircraft Services and Air Canada are jointly negligent.
 
 
 30
 This argument is without merit. The language of the liability provision does not support the interpretation that Air Canada seeks to place upon it. Grammatical construction of contracts generally requires that a qualifying phrase be construed as referring to its nearest antecedent. Wright & Seaton, Inc. v. Prescott, 420 So.2d 623, 629 (Fla.App.1982). The natural reading of the phrase "wholly or in part" as used in the liability provision is that it modifies the phrase "caused by or resulting from." The plain meaning of the provision is that Aircraft Services does not assume any liability for damages when they are wholly or partially caused by or result from any failure or fault other than negligence or willful misconduct in furnishing or omitting to furnish services under the Contract. Thus, the provision actually indicates an intent to limit liability only to those situations when the sole cause of damage is negligence or willful misconduct of Aircraft Services in furnishing or omitting to furnish services under the Contract. Air Canada's strained interpretation of the Contract terms does not meet the clear and unequivocal test for finding an intent to indemnify Air Canada against its own wrongful conduct.
 
 
 31
 Therefore, because it was established in the main action that Air Canada was guilty of gross negligence and willful misconduct and because the indemnity agreement does not express a clear and unequivocal intention to indemnify Air Canada for damages caused in part by its own wrongful acts, the district court erred in granting Air Canada's motion for directed verdict and denying Aircraft Services' motion for directed verdict.[8]
 
 C. Denial of Air Canada's Rule 60(b) Motion
 
 32
 Air Canada argues in its cross-appeal that the district court erred in denying its motion to set aside the default judgment with regard to liability on the grounds of excusable neglect. Fed.R.Civ.P. 60(b)(1). The district court found that the default was caused by Air Canada's failure to establish minimum procedural safeguards. Air Canada argues that the affidavits that it presented with its motion to set aside the default show that minimum procedural safeguards in fact existed.
 
 
 33
 Denial of a motion to set aside a default judgment may be reversed on appeal only upon a showing of abuse of discretion. McGrady v. D'Andrea Electric, Inc., 434 F.2d 1000, 1001 (5th Cir.1970). In order to carry his burden of establishing excusable neglect, the movant must show both a good reason for his default and the existence of a meritorious defense to the action. Id.
 
 
 34
 Default that is caused by the movant's failure to establish minimum procedural safeguards for determining that action in response to a summons and complaint is being taken does not constitute default through excusable neglect. Davis v. Safeway Stores, Inc., 532 F.2d 489, 490 (5th Cir.1976) (fact defendant sent complaint to its insurance company in timely manner did not constitute excusable neglect when lack of communication between defendant and insurance company for three weeks after latter received copy of complaint indicated absence of minimum procedural safeguards); Baez v. S.S. Kresge Co., 518 F.2d 349, 350 (5th Cir.1975), cert. denied, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976) (fact complaint received in timely manner by defendant was lost in mail en route to counsel did not constitute excusable neglect because of failure to establish minimum procedural safeguards).
 
 
 35
 In this case, Air Canada's regional manager was served with process and forwarded it to in-house counsel in Montreal, Canada, via intercompany mail. The evidence of procedures presented by Air Canada related to the processing of mail designated for the legal department once it reached Montreal. The minimum procedural safeguards with which Baez and Davis are concerned, however, relate to some system of checking up on process to see that it has in fact reached its destination and that action is being taken. Air Canada admits that in-house counsel never returned the phone call to him from the regional manager regarding the complaint and that the regional manager never followed up to see if the process he put in the mail in fact reached its destination in Montreal. The only excuse Air Canada offers for the failure of process to reach Montreal is that a mail clerk must have misplaced the complaint. This is not a sufficient excuse. Cf. Insurance Company of North America v. S/S "Hellenic Challenger," 88 F.R.D. 545, 548 (S.D.N.Y.1980) (evidence that employee misplaced complaint so that it never reached attention of appropriate authorities did not establish excusable neglect). Therefore, the district court did not abuse its discretion in denying Air Canada's motion to vacate the default judgment with regard to liability.
 
 
 36
 Gibbs also asserts that Air Canada failed to meet the second leg of the test for establishing excusable neglect because it did not establish a meritorious defense by a clear and definite recitation of facts as required by the former Fifth Circuit's decision in Moldwood Corporation v. Stutts, 410 F.2d 351, 352 (5th Cir.1969). Because we find that Air Canada failed to establish good cause for its default, we need not reach this argument.
 
 
 37
 AFFIRMED in part; REVERSED in part and REMANDED for entry of judgment in favor of Aircraft Services, Inc. on the third party complaint.
 
 
 
 *
 Honorable Reynaldo G. Garza, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation
 
 
 [1]
 Air Canada's complaint also sought contribution and common law indemnification on bailment, negligence, and negligent hiring theories, but these claims were voluntarily abandoned before trial
 
 
 [2]
 The parties agree that the Contract is governed by Florida law
 
 
 [3]
 During oral argument, Aircraft Services indicated, in response to questions from the panel, that the law relating to when an employee is acting within the scope of his employment for purposes of respondeat superior was relevant to construction of the indemnification provision because that provision indemnifies against acts of Aircraft Service's "authorized representatives, agents or employees." Aircraft Services argued that an employee could not be "authorized" if he was not acting within the scope of his employment. We find this to be too strained a construction of the indemnification language. The term "authorized" as used in the indemnification provision clearly modifies only the word "representatives" and is merely descriptive of one of the categories of individuals covered by the indemnification provision
 
 
 [4]
 In an Order entered June 18, 1982, issued in connection with Gibbs' Motion to Compel discovery, the district court made the following finding in denying the motion with regard to discovery related to Air Canada's liability for Gibbs' loss:
 The record reflects that on April 24, 1982, Final Default Judgment against defendant, AIR CANADA, was set aside as to damages, leaving the Default intact on the issue of liability. Therefore it is established on the record that defendant, AIR CANADA, was guilty of gross negligence and willful misconduct in breaching its duty to ensure the safety, security and proper delivery of the precious metal cargo, as alleged in the Complaint.
 
 
 [5]
 Convention for Unification of Certain Rules Relating to International Transportation by Air, October 12, 1929, 49 Stat. 3000, T.S. No. 876 (1934), reprinted at 49 U.S.C.A. Sec. 1502 note
 
 
 [6]
 Article 25(1) states that "[t]he carrier shall not be entitled to avail himself of the provisions of this convention which exclude or limit his liability, if the damage is caused by his wilful misconduct or by such default on his part as, in accordance with the law of the court to which the case is submitted, is considered to be equivalent to wilful misconduct." The limitation also does not apply if the consignor made a special declaration of value, Article 22(2), or if an agent of the carrier acting within the scope of his employment committed willful misconduct or gross negligence. Article 25(2). Neither of these exceptions could support a judgment for the full value in the present case without a finding of active negligence on the part of Air Canada. Gibbs' complaint did not allege that his insured had made the special declaration provided for in Article 22(2), and, as discussed above, the allegations of the complaint dealt with Air Canada's own liability for failure to insure the safety of the cargo and not any vicarious liability it might have had for Sorey's acts
 
 
 [7]
 But see Crawford v. Pope & Talbot, Inc., 206 F.2d 784, 795 (3rd Cir.1953); Restatement of Judgments Sec. 107(a) (1942) (indemnitee only bound by findings in main action if indemnitor also bound by those findings because he had notice of and opportunity to defend in prior proceeding)
 
 
 [8]
 Aircraft Services also argues, in reliance on the former Fifth Circuit case of Island Container Corp. v. Atlantic Coast Line R. Co., 266 F.2d 857 (5th Cir.1959), that the finding that Air Canada engaged in willful misconduct precludes indemnification because indemnification for such conduct would be against Florida's public policy. This argument is without merit. The Island Container Court stated that the prohibited conduct is the kind which imports "such callous or willful disregard of the rights of others as to make an indemnity agreement relating to it too shocking to be permitted under enlightened public policy" and that, therefore, cases dealing with gross negligence or even equating gross negligence to wanton conduct do not provide the appropriate standard. Id. at 860. There must be evidence from which an ethical or moral wrong can be inferred. Id. Thus, the finding that Air Canada was guilty of willful misconduct does not by itself establish a violation of public policy