EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION, Plaintiff–Appellant,
Cross–Appellee,

v.

MIKE SMITH PONTIAC GMC, INC.,
Defendant–Appellee, Cross–Appellant.

No. 89–3036.

United States Court of Appeals,
Eleventh Circuit.

March 14, 1990.

Estelle D. Franklin, Asst. Gen. Counsel, Washington, D.C., for plaintiff-appellant, cross-appellee.

Paul Richards, Armonk, N.Y. and Wayne L. Helsby, Orlando, Fla., for defendant-appellee, cross-appellant.

Before FAY and COX, Circuit Judges, and ESCHBACH [*], Senior Circuit Judge.

FAY, Circuit Judge:

Appellant Equal Employment Opportunity Commission (EEOC) brought an action on behalf of Georgiana Bennett against Mike Smith Pontiac GMC, Inc. (Smith Pontiac) for its refusal to hire her because of her gender. The EEOC obtained an entry of default against Smith Pontiac as a result of Smith Pontiac's failure to respond to the complaint. After a bench trial on the issue of damages, the district court awarded the EEOC damages based on the average salary and average length of employment of other Smith Pontiac salespersons. Both parties challenge the amount of damages awarded. The EEOC's primary contention is that the district court should have used the period between which Georgiana Bennett was denied employment and the date the dealership was sold as the back pay period, rather than the average length of employment of Smith Pontiac salespersons. The EEOC further argues that the district court used erroneous figures in calculating back pay. Smith Pontiac challenges the district court's refusal to set aside the default judgment establishing liability. Smith Pontiac further contends that the period of back pay should have been limited to the length of the training program and that the district court erred in restricting evidence regarding the training program.

For the reasons set forth below, we VACATE the judgment of the district court and REMAND for further proceedings consistent with this opinion.

BACKGROUND

Smith Pontiac was a Florida corporation which operated Pontiac, GMC, Alfa Romeo, and Mercedes automobile dealerships in the state of Florida doing business under the names of Mike Smith Pontiac GMC, Inc. and Friendly Motors from July 1983 until October 1987.

In early December 1983, Georgiana Bennett applied for employment as an automobile salesperson at Smith Pontiac. She was denied the position allegedly because she had previous sales experience and Smith Pontiac wanted only inexperienced salespersons. Subsequently, Bennett unsuccessfully sought employment at various other automobile dealerships. Having failed to secure an automobile sales position, Bennett found employment as a real estate salesperson.

On September 19, 1986, the Equal Employment Opportunity Commission, on behalf of Georgiana Bennett, filed a complaint alleging that Mike Smith Pontiac GMC, Inc. violated Title VII of the Civil Rights Act of 1964 by denying Bennett employment as an automobile salesperson because of her gender. The EEOC further alleged that Smith Pontiac failed to maintain employment applications for a period of six months as required by 29 C.F.R. section 1602.14. Smith Pontiac failed to plead or otherwise defend against the EEOC's allegations, and the clerk of the district court entered a default pursuant to Fed.R.Civ.P. 55(a). The district court refused to set aside the default entry.

The EEOC sought injunctive and monetary relief against Smith Pontiac. Prior to the trial to determine damages, the EEOC filed a motion in limine to exclude evidence relating to the issue of whether Bennett would have begun her employ in a training program had she been hired. The judge

---

[*] Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

ruled that such evidence was admissible to mitigate damages but not to avoid liability, as liability had already been established. Ultimately, over the objection of opposing counsel, Smith Pontiac presented evidence that only about ten percent of the new employees completed the training class to become salespersons.

At trial, the EEOC sought to prove that it was entitled to recover the pay of a comparator male employed by Smith Pontiac for the period commencing in December 1983, when the alleged discrimination occurred, and ending in October 1987, when the dealership was sold. Smith Pontiac, arguing that Bennett would not have completed the training program had she been hired, contended that the EEOC was entitled to recover only the salary paid to employees who failed to successfully complete the training program. Alternatively, Smith Pontiac urged the court to award the EEOC damages based upon the average salary received over the average length of time salespersons hired in December 1983 remained employees. Smith Pontiac calculated that the average tenure of those hired in December 1983 was 21.5 weeks, and their average weekly salary was $191.56. In the event that these figures were rejected, Smith Pontiac argued that the figures to be used were the average salary and the average tenure of all non-Mercedes salespersons employed in December 1983 (including both longstanding and new employees). Smith Pontiac alleged that the average tenure of those non-Mercedes employees was 23 weeks, and their average weekly earnings were $231.43.

After a bench trial, the district court entered an order recognizing that the average weekly earnings for employees in all departments (including Mercedes) was $231.43, and that the average tenure of all employees was 21.5 weeks. Additionally, the district court found that plaintiff's interim earnings for the 21.5 week period were $706.50.[1] Thus, the court ordered that the EEOC was entitled to $4975.75 in back pay plus $1495.52 in payment for lost

benefits minus $706.50 in interim earnings. The trial judge arrived at a total award figure of $6471.27, which obviously resulted from miscalculation. In its final judgment, however, the court awarded the EEOC $5941.28, which reflected the proper amount of interim income and accurate calculations based on the figures used.

## DISCUSSION

Appellant EEOC contends that the district court abused its discretion insofar as the court should have awarded back pay from the time Georgiana Bennett was denied employment to the date when the dealership was sold, a period covering forty-seven months. Appellant further asserts that the district court committed clear error in finding that the average tenure of all Smith Pontiac employees was 21.5 months and that the average salary of all Smith Pontiac employees was $231.43.

Cross-appellant Smith Pontiac challenges the district court's denial of its motion to set aside the default. Smith Pontiac contends that the district court applied the wrong standard in determining whether to set aside the default. It asserts that the court erroneously utilized the standard associated with default judgments (excusable neglect) rather than the standard associated with entries of default (good cause). Cross-appellant further argues that notwithstanding the trial court's failure to apply the appropriate standard, the court abused its discretion in refusing to set aside the default because Smith Pontiac alleged a meritorious defense and did not wilfully refuse to answer the complaint, and no prejudice to the EEOC would result. Additionally, Smith Pontiac challenges the district court's refusal to limit the back pay period to the length of time Georgiana Bennett would have been in training and contends that the judge erroneously limited the admission of evidence concerning the training program.

### Setting Aside the Default

 Rule 55(c), Fed.R.Civ.P., provides that the court may set aside an entry of

---

**1.** Both plaintiff and defendant noticed that the interim earnings figure was inaccurate and informed the court that the proper amount of

Bennett's interim earnings was $529.99. The court subsequently used the $529.99 figure in its judgment.

default for good cause shown and may set aside a default judgment in accordance with Rule 60(b). Rule 60(b) allows the court to set aside a final judgment for excusable neglect, among other reasons. The importance of distinguishing between an entry of default and a default judgment lies in the standard to be applied in determining whether or not to set aside the default. The excusable neglect standard that courts apply in setting aside a default judgment is more rigorous than the good cause standard that is utilized in setting aside an entry of default. *Jones v. Harrell,* 858 F.2d 667, 669 (11th Cir.1988); *United States v. One Parcel of Real Property,* 763 F.2d 181, 183 (5th Cir.1985); *Meehan v. Snow,* 652 F.2d 274, 276–77 (2d Cir.1981) (per curiam). Smith Pontiac urges that because the court used the more rigorous excusable neglect standard rather than the good cause standard, this court should reverse the trial court's refusal to set aside the entry of default. Ordinarily, we would entertain this argument on the merits. However, Smith Pontiac has provided us with a more attractive alternative. In its motion to set aside the entry of default, Smith Pontiac argued that its failure to answer the EEOC's complaint was a result of excusable neglect and "point[ed] out the ... facts in support of its claim that Default was entered by reason of excusable neglect on the part of the Defendant...." R1–10–1.[2] Thus, not only did Smith Pontiac fail to bring the good cause standard to the attention of the court, but also Smith Pontiac urged the court to use the excusable neglect standard. Consequently, even if the trial court did employ the incorrect standard in determining whether to set aside the default, we will not reverse its decision because Smith Pon-

tiac invited the error. *See Crockett v. Uniroyal, Inc.,* 772 F.2d 1524, 1530 n. 4 (11th Cir.1985); *Overhead Door Corp. v. Newcourt, Inc.,* 611 F.2d 989, 990 (5th Cir.1980) (per curiam); *cf. United States v. Males,* 715 F.2d 568, 571 (11th Cir.1983).

■ Nor will we reverse the district court on the merits of the ruling. We review the district court's decision to uphold the entry of default for abuse of discretion. *Jones,* 858 F.2d at 669; *Gulf Coast Fans, Inc. v. Midwest Elec. Importers, Inc.,* 740 F.2d 1499, 1510 (11th Cir. 1984); *Robinson v. United States,* 734 F.2d 735, 739 (11th Cir.1984). In order to set aside a default on the basis of excusable neglect, the defaulting party must first show that it had a meritorious defense that might have affected the outcome and that granting the motion would not result in prejudice to the opposing party. *Gulf Coast Fans,* 740 F.2d at 1511. The party must then show that good reason existed for failure to reply to the complaint. *Gibbs v. Air Canada,* 810 F.2d 1529, 1537 (11th Cir.1987); *McGrady v. D'Andrea Elec., Inc.,* 434 F.2d 1000, 1001 (5th Cir.1970) (per curiam).

■ We cannot find that the trial court abused its discretion in this case. The EEOC filed its complaint against Smith Pontiac on September 19, 1986. Pursuant to Fed.R.Civ.Pro. 4(d)(3)[3], counsel for the EEOC attempted to serve the corporation's registered agent via certified mail at the address listed with the Florida Department of State, Division of Corporations, but the mailing was returned because the agent had moved without notifying the Department of State. The EEOC then resorted to personal service, as well as service by mail, on the managing agent, Larry Rigby.[4]

---

**2.** In fact, Smith Pontiac used the subtitle "EXCUSABLE NEGLECT" in its motion to set aside the entry of default. R1–10–1.

**3.** Fed.R.Civ.Pro. 4(d)(3) states that service upon a domestic corporation shall be made "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process...."

**4.** In Smith Pontiac's motion to set aside the default, it emphasized that Larry Rigby was merely an "interim" manager. Apparently, Smith Pontiac has abandoned any argument relating to the propriety of service upon Larry Rigby as interim manager. In fact, in its brief, Smith Pontiac states: "[S]ubsequent service upon MSP's manager at the dealership came during a time of confusion and extraordinary circumstances...." Brief of Appellee/Cross–Appellant at 17.

Having received no response from Smith Pontiac, the EEOC requested an entry of default, and mailed copies of the request to counsel for Smith Pontiac at all known addresses on January 21, 1987. On January 26, 1987, a default was entered because Smith Pontiac failed to plead or otherwise defend. Nearly a month later, on February 20, 1987, counsel for Smith Pontiac filed a notice of appearance. Not until June 8, 1987, did counsel for Smith Pontiac file its motion to set aside the default.[5]

Smith Pontiac has revealed no meaningful justification for engaging in the dilatory conduct which caused the default to be entered. Counsel for Smith Pontiac argues that when Larry Rigby was served, the dealership was engaged in litigation regarding franchise rights which consumed the attention of upper level management and caused confusion at the dealership. We do not believe such an argument warrants our reversal of the district court's discretionary ruling. Such a holding would weaken the integrity of the rules, which are to "be construed to secure the just, speedy, and inexpensive determination of every action,"[6] and would encourage businesses to ignore "petty" complaints when more "pressing" matters command attention. Additionally, we note that counsel delayed filing a motion to set aside the default until almost four months after a notice of appearance was filed. We are convinced that the district court did not abuse its discretion. Accordingly, we AFFIRM the district court's denial of Smith Pontiac's motion to set aside the default.

*Damages*

Both parties contest the district court's award of damages. The EEOC argues that the damages awarded inadequately compensate for Georgiana Bennett's losses and that the district court erred in its calculations. Smith Pontiac argues that the EEOC has been awarded too much.

■ Choices regarding the remedy to award an aggrieved party under Title VII are left to the discretion of the trial court. *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 415–16, 95 S.Ct. 2362, 2370, 45 L.Ed.2d 280 (1975); *Jepsen v. Board of Regents,* 754 F.2d 924, 927 (11th Cir.1985) (per curiam); *Groves v. McLucas,* 552 F.2d 1079, 1080 (5th Cir.1977) (per curiam). Consequently, we will not reverse the district court's award unless it has abused its discretion. In reviewing its decision, we consider that "the purpose of back pay awards is to make whole the victims of employment discrimination." *Merriweather v. Hercules, Inc.,* 631 F.2d 1161, 1167 (5th Cir.1980) (citing *Pettway v. American Cast Iron Pipe Co.,* 494 F.2d 211, 252 (5th Cir. 1974), *cert. denied,* 439 U.S. 1115, 99 S.Ct. 1020, 59 L.Ed.2d 74 (1979)). We are also aware that a court should not award back pay unless the wages are properly owed the employee, *Merriweather,* 631 F.2d at 1167, for "the district court must seek to place the injured party in the position he or she would have been in absent the discriminatory actions." *Walters v. City of Atlanta,* 803 F.2d 1135, 1145 (11th Cir.1986).

In this case, the district court awarded back pay based on the average length of time salespersons hired in December 1983 remained in the employ of Smith Pontiac. The EEOC urges that the district court should have awarded back pay from the time Georgiana Bennett was denied a position to the date Smith Pontiac was sold, a period of 47 months.[7] Conversely, Smith Pontiac contends that Georgiana Bennett would not have successfully completed the

---

**5.** Smith Pontiac claims that its counsel delayed filing the motion to set aside the default because the parties were engaged in settlement discussions and he understood that the EEOC would not dispute the default if negotiations ceased. Counsel for the EEOC vehemently contends that no such agreement was reached. We will not act as a factfinder. Had Smith Pontiac desired the trial judge to consider the fact that settlement negotiations had precluded counsel from responding to the complaint, it should have raised the issue before the trial judge ruled on the motion to set aside the default.

**6.** Fed.R.Civ.P. 1.

**7.** The EEOC chose the date of sale of Smith Pontiac rather than the date judgment was entered because Georgiana Bennett's employment would have terminated, had she been hired, on the date of sale. *See Mims v. Wilson,* 514 F.2d 106, 110 (5th Cir.1975).

training program, and her award should be limited to the training period.

■ The EEOC relies on *Walker v. Ford Motor Co.*, 684 F.2d 1355 (11th Cir.1982), wherein this court stated:

In cases involving employment terminable at will or otherwise of indefinite duration, courts in essence have presumed that once the plaintiff shows that discrimination resulted in economic injury, either through improper discharge or a failure to hire, the injury continues until reinstatement. This presumption is proper not only because the defendant's wrongful conduct prevents accurately reconstructing the plaintiff's work history but also because in the absence of evidence to the contrary, no reason exists to assume that employment for an indefinite term would not have lasted indefinitely. *Id.* at 1361 (citations omitted).

In this case, however, evidence did exist which supported the trial judge's decision to limit back pay to the average tenure of salespersons. None of the salespersons in the non-Mercedes departments had been employed for forty-seven months or more. In fact, the most senior non-Mercedes salesperson had been employed for only 106 weeks, and most non-Mercedes salespersons had been employed for less than eighteen months. Defendant's Exhibit No. 3. In response to this evidence, the EEOC simply provided no factual basis, besides mere speculation, for concluding that Georgiana Bennett would have remained employed for the entire forty-seven month period. We find that the district court properly exercised its discretion when it opted to use averages in computing the back pay period. *Cf. Equal Employment Opportunity Comm'n. v. Liggett & Myers Inc.*, 690 F.2d 1072, 1077 (4th Cir.1982) (In instances where individualized male comparator approach is unworkable, female employee's wages should be compared to the average salary paid to males doing same work).

■ The district court did commit error, however, in failing to make a clear finding as to whether Georgiana Bennett would have successfully completed the training course. The district court equivocally stated that "[p]laintiff's background suggests a high probability she would have successfully completed the training program and continued on as a sales associate." R2–54–9. It is critical to this case, however, that the court make a conclusive, unequivocal finding of fact on this issue. Otherwise, the accuracy of the back pay award is jeopardized, and appellant cannot be made whole.

■ If the court conclusively determines that Georgiana Bennett would not have completed the training program, then the back pay period should be limited to the average tenure of those salespersons who failed to complete the training program. Likewise, the rate of back pay should be limited to the average salary of those employees who failed to complete the training program. Conversely, if the court concludes that Georgiana Bennett would have successfully completed the training program, then the back pay rate and period should reflect the average tenure and salary of only those salespersons who successfully completed the training program. As it stands now, the district court's order includes figures from both salespersons who have completed the program and those who have not completed the program. Consequently, the back pay award has either undercompensated or overcompensated appellant, depending on whether Georgiana Bennett would or would not have completed the training program.

■ Cross-appellants complain, however, that they were prevented from introducing evidence regarding the training program because of the court's limitation. Prior to the trial on damages, in response to The EEOC's motion in limine, the district court ruled that Smith Pontiac could introduce evidence that Georgiana Bennett would have begun defendant's employ in a training program in order to mitigate its damages, but not to avoid liability. R3–3–5. In its final order, the court reiterated that such a limitation had been imposed. Upon review of the record, however, we fail to see how the district court's limitation interfered with Smith Pontiac's ability to

show that Georgiana Bennett would have failed to complete the training program. We view the judge's ruling as limiting the purpose for which such evidence could be introduced, not as a ban on its introduction. In fact, in presenting its case on damages, Smith Pontiac introduced the testimony of Larry Rigby who stated over objection that he estimated that only about ten percent of the people entering the training program completed it. Nothing in the record indicates that Smith Pontiac proffered any additional evidence on the issue. Thus, the trial court's limitation of evidence regarding the training program was of no consequence to Smith Pontiac.[8]

 Finally, we address the district court's use of erroneous figures in calculating the amount of the back pay award. In its order awarding damages to the EEOC; the court agreed "with defendant that the period of back pay should be limited to the average length of employment for Smith Pontiac employees, 21.5 weeks." R2–54–11. The court evidently located this figure in defendant's pre-trial brief, to which the court cited numerous times in its order, wherein defendant calculated that the average length of employment of those newly hired in December, 1983, was 21.5 weeks. The court further found that the average weekly earnings for department 110, 111 and 112[9] employees over the 21.5 week period were $231.43. This figure was derived from Defendant's Exhibit 3, misleadingly titled "All Employees in December 1983," which actually included the average weekly salary and average length of employment of only those salespersons who worked in departments 111 and 112 in De-

cember 1983. The error in the district court's findings is apparent. It based its calculation of the back pay period on the average tenure of salespersons newly hired in December 1983, but based its calculation of the back pay rate on the average salary of all non-Mercedes salespersons working in December 1983, not just new hires. More importantly, the court stated that it was including the salaries of Mercedes salespersons in its average when in fact the figure reflected only the salaries of non-Mercedes salespersons. R2–54–14. We harbor no doubt that the district court committed clear error in its determination of the amount of the award. *See* Fed.R.Civ. Pro. 52(a); *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

Accordingly, we VACATE the district court's judgment and REMAND the case so that the district court may determine whether Georgiana Bennett would have successfully completed Smith Pontiac's training program had she been hired, whether the position of Mercedes salesperson was comparable to the position which Georgiana Bennett sought, and finally the appropriate amount of damages to be awarded the EEOC.

---

8. We do not intend to restrict the trial court's ability to receive further evidence on remand. We hold only that the trial judge did not commit prejudicial error in limiting the use of evidence regarding the training program.

9. Department 110 was the department in which Mercedes salespersons worked. The parties vigorously contested whether the salaries and tenure of these employees should have been included in the average because employees from other departments were not authorized to sell Mercedes, and Mercedes salespersons made substantially more money than those in the other departments. The record does not make clear

whether the court intended to include the wages and tenure of the Mercedes salespersons in its average. Upon remand, the court should determine whether the Mercedes salespersons occupied a position comparable to the position for which Georgiana Bennett was denied employment so that it can determine whether to include the wage and tenure figures of department 110 employees in its average.

Department 111 consisted of employees who were authorized to sell new cars other than Mercedes and used cars. Department 112 employees sold primarily used cars, but also sold new cars other than Mercedes.