Carol **HEATON**, Plaintiff,

v.

**BONACKER & LEIGH**, Defendant.

Civil Action No. 96–D–1318–N.

United States District Court,
M.D. Alabama,
Northern Division.

Feb. 7, 1997.

Mark W. Sabel, Jr., M. Wayne Sabel, Montgomery, AL, for Plaintiff.

David J. Middlebrooks, Brent L. Crumpton, Birmingham, AL, for Defendant.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is Defendant Bonacker & Leigh's ("Leigh") "Motion to Vacate Entry of Default and For Leave to File an Answer" filed on February 5, 1997. After careful consideration of the arguments of counsel, the caselaw and the record as a whole, the court finds that the Leigh's motion is due to be denied.

### Background

Plaintiff Carol Heaton ("Heaton"), acting as her own attorney, filed her complaint alleging sex and age discrimination on August 23, 1996. On August 26, 1996, the Clerk of the Middle District signed and mailed a summons to Leigh at its Miami, Florida address. A "D. Griggs" signed for the summons on August 29, 1996. According to the summons accompanying the complaint, Leigh had until September 18, 1996, to answer Heaton's complaint.[1] Leigh missed this deadline and Heaton responded by filing an "Application for Judgment by Default" on October 17, 1996. There is no evidence that Heaton served this motion on Leigh.

On October 21, 1996, the court issued an order denying Heaton's motion for entry of default judgment and explained that a default must, be entered prior to the entry of default judgment. This order was forwarded to both Leigh and Heaton. On October 25, 1996, Heaton applied to the Clerk of the Court for an entry of default in accordance with the court's order. There is no evidence that this application was served on Leigh. On November 5, 1996, the Clerk of the Court entered a default against Leigh and sent a copy of this entry to Heaton but apparently not to Leigh. On January 15, 1997, Heaton filed her second application for entry of default judgment.

Determining that the requirements for default judgment had been satisfied, the court prepared to enter default judgment against Leigh. However, because Heaton's claim was not for a sum certain, the court was required to conduct a hearing to determine the amount of damages due before granting Heaton's application for entry of default judgment. Therefore, the court set a hearing for February 7, 1997, to "determine damages on plaintiff's application for judgment by default." A copy of this order was furnished to both Leigh and Heaton.

On January 29, 1997, Leigh filed a motion to continue the damage determination hearing and Leigh's newly retained counsel filed a notice of appearance. By stamp, the court denied Leigh's motion to continue. On February 5, 1997, Leigh filed a motion to vacate the entry of default and requested leave to file an answer. Leigh also filed a brief in support of these motions.

### Discussion

Rule 55 of the Federal Rules of Civil Procedure governs the procedure for obtaining a default judgment. Rule 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." Fed.R.Civ.P. 55(a). Thereafter, a party may seek a default judg-

---

1. The summons informed Leigh that it had twenty days exclusive of the date of receipt of the summons in which to answer Heaton's complaint. A return receipt card shows that the summons was signed for on August 29, 1996, which means that the twenty-day period began to run on August 30, 1996, and ended on September 18, 1996.

ment from either the district judge or the clerk of the court, depending upon whether the damages are for a "sum certain" or not. *See* Fed.R.Civ.P. 55(b).

Default judgment is not a favored remedy, *In re Hammer,* 940 F.2d 524, 525 (9th Cir.1991), and "should be used only in extreme situations", *Wahl v. McIver,* 773 F.2d 1169, 1174 (11th Cir.1985). Default judgment may be set aside under the provisions of Rule 60(b) of the Federal Rules of Civil Procedure while an entry of default may be set aside under the provisions of Rule 55(c). *See also E.E.O.C. v. Mike Smith Pontiac GMC, Inc.,* 896 F.2d 524, 527–28 (11th Cir.1990). Rule 60(b) allows a court to set aside a default judgment on the basis of "excusable neglect" while Rule 55(c) allows the court to set aside an entry of default for "good cause shown." *See also id.* While some courts have found that there is no difference between the two standards, *Insurance Co. of North America v. Morrison,* 154 F.R.D. 278; 280 (M.D.Fla.1994) ("For all practicable purposes, good cause and excusable neglect are treated alike under the excusable neglect standard of FRCP 60(b)."), the weight of authority in the Eleventh Circuit shows that the good cause shown standard is more lenient than the excusable neglect standard. *E.g. Smith Pontiac,* 896 F.2d at 528 (citing *Jones v. Harrell,* 858 F.2d 667, 669 (11th Cir.1988); *U.S. v. One Parcel of Real Property,* 763 F.2d 181, 183 (5th Cir.1985); *Meehan v. Snow,* 652 F.2d 274, 276–77 (2d Cir.1981)). Even though this action was ripe for entry of default judgment when Heaton filed her second application for default judgment on January 15, 1997, the court deferred the entry of judgment until a damage determination hearing could be held. Therefore, the court has only entered a default and the good cause standard is the appropriate measure for Leigh's motion.

The good cause standard is not strictly defined and varies depending on the factual situation. *Compania Interamericana Export–Import v. Compania Dominicana de Aviacion,* 88 F.3d 948, 951 (11th Cir.1996).

While the standard is quite flexible, courts have considered basic guidelines such as "whether the default was culpable or willful, whether setting it aside would prejudice the adversary, and whether the defaulting party presents a meritorious defense." *Id.* at 951 (citing *Commercial Bank of Kuwait v. Rafidain Bank,* 15 F.3d 238, 242 (2d Cir.1994); *Robinson v. U.S.,* 734 F.2d 735, 739 (11th Cir.1984)). These guidelines are not "talismatic" and others may just as easily " 'identify[ ] circumstances which warrant the finding of 'good cause' to set aside a default.' " *Id.* (quoting *Dierschke v. O'Cheskey,* 975 F.2d 181, 184 (5th Cir.1992)).

A party's failure to establish "minimum procedural safeguards" for handling legal pleadings which results in a complaint being misplaced does not constitute excusable neglect for the purpose of setting aside a default judgment. *E.g., Florida Physician's Ins. Co., Inc. v. Ehlers,* 8 F.3d 780, 784 (11th Cir.1993); *Gibbs v. Air Canada,* 810 F.2d 1529, 1537 (11th Cir.1987); *Davis v. Safeway Stores, Inc.,* 532 F.2d 489, 490 (5th Cir.1976); *Baez v. S.S. Kresge Co.,* 518 F.2d 349, 350 (5th Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976); *Morrison,* 154 F.R.D. at 280.[2] While the good cause standard is more lenient than the excusable neglect standard, the cases expounding the excusable neglect standard help guide the court's analysis of the instant case.

The evidence Leigh submitted with its motion to vacate entry of default clearly shows that Leigh's failure to answer was due to an internal communications breakdown. Following its initial receipt by a receptionist, D[enise] Griggs, the summons was forwarded to David Jennings ("Jennings"), the Senior Vice–President, Secretary, Treasurer, and Chief Financial Officer of Leigh. According to his affidavit, Jennings then sent the original summons to Neil Bretan ("Bretan"), Leigh's outside counsel for corporate and tax matters, and also sent a copy of the summons to the Vice–President in charge of Administration, Dennis Tabil ("Tabil"). Jennings as-

---

**2.** Decisions of the former Fifth Circuit filed prior to October 1, 1981, constitute binding precedent in the Eleventh Circuit. *Bonner v. City of Prich-* *ard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

sumed that forwarding the materials to Bretan and Tabil ensured the matter would be properly handled.

According to Bretan's affidavit, he never received the original summons and the accompanying note written by Jennings. Tabil was involuntarily terminated at some point during November 1996 and has not presented an affidavit to the court concerning the summons. Following Tabil's termination, his responsibilities, which included tracking litigation matters, were divided among several Leigh personnel including Jennings. Leigh took no action concerning Heaton's claims until Robert O'Donnell, President and CEO of Leigh, allegedly read a copy of the court's January 21, 1997, order setting the default judgment damage hearing. Leigh contacted its current counsel which entered an appearance the next day, January 29, 1997. Only at this point did Leigh begin to pursue the defense of this matter in a vigorous manner.

While miscommunication due to poor internal communication systems is understandable, it is not excusable. *Air Canada,* 810 F.2d at 1537. It is not enough to argue that a mail clerk misplaced the complaint, *Id.,* or to contend that the Postal Service lost the complaint, *Baez,* 518 F.2d at 350. Instead, organizations must have systems for "checking up on process to see that it has in fact reached its destination and that action is being taken." *Air Canada,* 810 F.2d at 1537; *see also Baez,* 518 F.2d at 350 (holding that "internal procedural safeguards could and should have been established" to prevent the loss of a complaint by the Postal Service and the consequent entry of default judgment).

Throughout this action Leigh lacked a system for shepherding complaints through the proper litigation process.[3] The affidavits demonstrate a lack of procedural safeguards which would have prompted follow-up on the status of Heaton's suit. Instead, Leigh's brief implies that the company mailroom and Postal Service are responsible for the com-

plaint's failure to reach Breton. The brief also implies that Tabil failed to provide the necessary internal controls over the management of this litigation. However, these failures are exactly those contemplated by the *Air Canada* line of communication procedure cases. Even though these cases largely concern default judgment, the court is persuaded that the *Air Canada* line of cases should apply here. *See Morrison,* 154 F.R.D. at 280 (finding that forwarding complaint to improper office and failure to properly forward did not satisfy either the good cause standard or the excusable neglect standard). Therefore, Leigh's claim of an internal communication breakdown is not sufficient to avoid an entry of default.

This finding is especially appropriate where Leigh received a second chance to avoid default judgment when the court provided Leigh a copy of its October 21, 1996, order. This order placed Leigh on notice that default judgment was imminent. Leigh's communication system never acknowledged receipt of this order. Additionally, Leigh failed to respond to Heaton's complaint for approximately five months. This long delay risks causing serious prejudice to Heaton's claims. *See Robinson,* 734 F.2d at 738. Even though it appears Leigh did not willfully delay in its response to Heaton's claim, it is enough that Leigh's default was caused by neglect. *See id.* at 738.

While the denial of Leigh's motion and the entry of default judgment may seem harsh, the court notes that Leigh has indicated that it will attend the scheduled hearing and offer evidence on the subject of damages. Such an offering works to substantially lessen the prejudice of the court's ruling because it allows Leigh an opportunity to significantly limit its financial exposure. Under these circumstances, the court finds that such a result is appropriate and furthers the inter-

---

3. The court notes that Leigh was in the process of negotiating and completing the sale of a major portion of its assets during the pendency of Heaton's complaint. However, such turbulent times do not free a company from its legal obligations. *See Smith Pontiac,* 896 F.2d at 529 (noting that setting aside default judgment because the defendant company was engaged in litigation concerning franchise rights "would encourage businesses to ignore 'petty' complaints when more 'pressing' matters command attention").

est of justice.[4]

Accordingly, it is CONSIDERED and OR-DERED that the Leigh's motion to vacate the entry of default and for leave to file an answer be and the same is hereby DENIED.

4. While there is a "strong interest in resolving disputes on their merits," there is also "an equally compelling interest in the finality of litigation for the parties and society, whose scare resources are depleted by endless litigation." *Employers Ins. of Wausau,* 706 F.Supp. at 42.