[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-10420

Non-Argument Calendar

_____

DOUGLAS LINDSEY,

Plaintiff-Appellant,

*versus*

COMMISSIONER OF THE FLORIDA
DEPARTMENT OF LAW ENFORCEMENT,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 4:21-cv-00465-RH-MAF

_____

Before JORDAN, ROSENBAUM, and BRASHER, Circuit Judges.

PER CURIAM:

Douglas Lindsey appeals from the district court's Rule 12(b)(6) dismissal of his suit, brought under 42 U.S.C. § 1983, against Richard Sweringen, in his official capacity as Commissioner of the Florida Department of Law Enforcement. Mr. Lindsey argues that, based on an Oklahoma state court order finding that he was no longer required to register as a sex offender in that state, Florida's sex offender registration regime, Fla. Stat. § 943.0435, is unconstitutional as applied to him under the Full Faith and Credit Clause. Mr. Lindsey also challenges a district court order setting aside an entry of default against the FDLE. After review, we affirm.

I

Mr. Lindsey was convicted in Oklahoma in 1999 of multiple counts of statutory rape, sodomy, and lewd molestation, based on several sexual encounters with a 15-year-old girl. Due to his convictions, Mr. Lindsey was required to register as a sex offender pursuant to the Oklahoma Sex Offender Registration Act ("OSORA"). Based on an individualized risk assessment, he was found to be a level three sex offender, meaning he posed a serious danger to the community, and in accordance with that designation was required to register as a sex offender for life, pursuant to 57 Okla. Stat. §§ 582.5(C), 583(C), (D).

## A

In June of 2009, Mr. Lindsey filed a motion for review of his lifetime risk assessment determination. In September of 2009, an Oklahoma district court issued an order (the "Oklahoma order") finding that Mr. Lindsey was a level one sex offender. Pursuant to its authority under § 583(E), it determined that, based on his new designation and the absence of any legal trouble for a period of 10 years, he was no longer required to register as a sex offender under the OSORA. Soon thereafter he was removed from the Oklahoma Sex Offender Registry.

In 2011, Mr. Lindsey moved to Martin County, Florida. He did not register as a sex offender. In November of 2017, the FDLE, which maintains the Florida Sexual Offender and Predator System (the "Florida Registry"), informed him that he was required to register as a sex offender, pursuant to Fla. Stat. § 943.0435. Mr. Lindsey complied.

In June of 2019, Mr. Lindsey formally requested that the FDLE remove him from the Florida Registry based on the Oklahoma order. The FDLE denied his request, stating that, because he was "released from the sanction imposed for [his] qualifying sex crime after October 1, 1997, [he] ha[d] a requirement to register in Florida as a sexual offender."

In August of 2020, Mr. Lindsey moved back to Oklahoma. Florida law no longer requires him to update his registration

information, but his prior Florida registration remains publicly available, including on the internet.

## B

As a general matter, for persons with out-of-state convictions like Mr. Lindsey, residency in Florida triggers the registration requirement. *See* § 943.0435(1). Mr. Lindsey, specifically, was required to register because his offenses of conviction, the sanctions from which he was released after October 1, 1997, were similar to certain enumerated offenses under Florida law. *See* § 943.0435(1)(h)1.a. The registration requirement lasts for the duration of the offender's life absent a full pardon or post-conviction relief setting aside the conviction(s). *See* § 943.0435(11). Certain sex offenders may petition for removal of the registration requirement after 25 years, but not those convicted of offenses such as sexual battery and lewd or lascivious offenses, or similar offenses of another jurisdiction. *See* § 943.0435(11)(a). The Florida Sex Offender Act does not provide a mechanism for removal from the Florida Registry upon domiciling outside the state.

Mr. Lindsey filed his § 1983 complaint in August of 2021, seeking a declaration that the FDLE has violated and continues to violate his constitutional rights and a permanent injunction prohibiting the FDLE from continuing to enforce Florida's sex offender registration requirements against him. As relevant to this appeal, the complaint alleges that § 943.0435 is unconstitutional as applied to him, in violation of the Full Faith and Credit Clause, based on

the FDLE's failure to "fully recognize" the effect of the Oklahoma order.[1]

Mr. Lindsey effectuated service of process on the FDLE on September 3, 2021. The FDLE failed to timely file an answer or responsive pleading and Mr. Lindsey moved for entry of default, which the Clerk of Court entered on September 27, 2021. On September 29, 2021, he moved for default judgment. Several days later, on October 1, 2021, the FDLE moved to set aside the entry of default, explaining that its failure to timely respond was not willful but was "due to a perfect storm of [three] attorneys testing positive for COVID-19, two attorney positions being vacant, one attorney on [family and medical leave] and one attorney on military leave[, out of a total of 15 attorneys employed by the FDLE's Office of General Counsel,] during the time that the Complaint was to be processed." One of the attorneys who contracted COVID-19 also was responsible for coordinating civil litigation against the FDLE and communicating with the Office of the Attorney General to authorize representation. The FDLE further argued that it acted promptly to correct the default and that Mr. Lindsey would not be prejudiced. The district court granted the motion and directed the

---

[1] Mr. Lindsey also brought equal protection and right to travel claims under the Fourteenth Amendment, but does not challenge the disposition of those claims on appeal. As such, they are abandoned. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014). *See also Doe v. Moore*, 410 F.3d 1337, 1346-49 (11th Cir. 2005) (affirming the denial of equal protection and right to travel challenges to Florida's Sex Offender Act).

6                    Opinion of the Court                    22-10420

Clerk to set aside the default, crediting the FDLE's arguments and the "strong policy of determining cases on their merits."

The FDLE later filed a Rule 12(b)(6) motion to dismiss, which the district court granted. This timely appeal followed.

## II

We review *de novo* the grant of a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim. *See Leib v. Hillsborough Cnty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1305 (11th Cir. 2009). To survive a motion to dismiss, a complaint must state a facially plausible claim, that is, a claim supported by "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Full Faith and Credit Clause requires states to recognize and give effect to the "public Acts, Records, and judicial Proceedings of every other State." U.S. Const. art. IV, § 1; *V.L. v. E.L.*, 577 U.S. 404, 407 (2016). The purpose of the Full Faith and Credit Clause

> was to alter the status of the several states as independent foreign sovereignties, each free to ignore obligations created under the laws or by the judicial proceedings of the others, and to make them integral parts of a single nation throughout which a remedy upon a just obligation might be demanded as of right, irrespective of the state of its origin.

*Baker by Thomas v. Gen. Motors Corp.*, 522 U.S. 222, 232 (1998) (citation omitted). Regarding judgments, "the full faith and credit obligation is exacting." *Id.* at 233.

With respect to statutes, or "public Acts," the Full Faith and Credit Clause "does not require a State to substitute for its own statute . . . the statute of another State reflecting a conflicting and opposed policy," so long as the state has "not adopt[ed] any policy of hostility to the public Acts of that other State." *Franchise Tax Bd. Of Cal. v. Hyatt*, 578 U.S. 171, 176 (2016) (internal quotation marks and citations omitted). *See also Carroll v. Lanza*, 349 U.S. 408, 412-14 (1955) (holding that Arkansas courts need not apply a time limitation contained in Missouri's, but not Arkansas', workmen's compensation law); *Hughes v. Fetter*, 341 U.S. 609, 611-12 (1951) (finding a policy of hostility where the forum state, Wisconsin, excluded from its courts actions arising under Illinois law while permitting the adjudication of similar Wisconsin claims).

According to Mr. Lindsey, the Oklahoma order is a final judgment entitled to "exacting" full faith and credit in Florida. Like the district court, we disagree. Mr. Lindsey's 1999 Oklahoma convictions remain in place and their validity is not in question. This is not a case, therefore, where the underlying convictions have been set aside. The Oklahoma order, based solely on Oklahoma law—that is, the authority granted to the Oklahoma district court under 57 Okla. Stat. § 583(E)—does not purport to bind any other jurisdiction. Nor does Oklahoma, as a general matter, have extraterritorial jurisdiction to exercise police power in Florida. *See, e.g.,*

*Bigelow v. Virginia*, 421 U.S. 809, 827-28 (1975) (noting that a state's police power does not extend beyond its borders).

By demanding that Florida give full faith and credit to the Oklahoma order, Mr. Lindsey really is asking for full faith and credit to the provision of Oklahoma's sex offender law that effectuated the Oklahoma order. As such, the question before us is whether the Full Faith and Credit Clause requires Florida to abide by a discretionary sex offender registration removal procedure provided for under Oklahoma law, but not Florida law. The answer is no.

The provision of the OSORA at issue, § 583(E), permits level one sex offenders, regardless of the offense of conviction, to petition for discretionary removal of the sex offender designation after 10 years of no arrests for any felony or misdemeanor while registered at any level, thereby "allowing the person to no longer be subject to the registration requirements of the [OSORA]." *See* 57 Okla. Stat. § 583(E). *See also* § 583(C), (D). As noted, the Oklahoma court found that Mr. Lindsey was both a level one sex offender and eligible for removal of the sex offender designation.

By its plain language, § 583(E) does not affect the registration requirements of any other state. The Florida Sex Offender Act, on the other hand, does not rely on classification levels, and instead conditions the removal of sex offender registration requirements primarily on the offense of conviction. *See* Fla. Stat. § 934.0435(1). Persons convicted of certain enumerated sex offenses are subject to the sex offender designation for life and may not petition to

remove the designation. *See* § 943.0435(11)(a)1-2. The Oklahoma and Florida regimes are therefore in conflict, as Mr. Lindsey's case demonstrates, because a person absolved of registration in Oklahoma may nevertheless still be subject to indefinite registration in Florida based on the offense of conviction.

The Full Faith and Credit Clause does not direct us to resolve this conflict in Mr. Lindsey's favor. In fact, it prescribes the opposite, as the Clause does not require Florida to substitute the OSORA for the Florida Sex Offender Act. *See Hyatt*, 578 U.S. at 176. Florida has a legitimate interest in prescribing the manner in which it protects the health and welfare of its citizens from persons convicted of sex offenses. *See Smith v. Doe*, 538 U.S. 84, 93 (2003) (recognizing state's sex offender registry as a valid exercise of its power to protect the health and safety of its citizens); *United States v. Salerno*, 481 U.S. 739, 747 (1987) ("There is no doubt that preventing danger to the community is a legitimate regulatory goal."). Florida need not dispense with its preferred method of doing so because another jurisdiction has less restrictive requirements on sex offender registration. As the district court essentially recognized, even if Oklahoma did not have any registration requirements for offenders like Mr. Lindsey, that legislative choice would not prevent Florida from enacting a sex offender registration scheme.

## III

A district court may set aside an entry of default "for good cause." Fed. R. Civ. P. 55(c). We review for abuse of discretion

the district court's determination to set aside the Clerk's entry of default. *See In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003).

In evaluating good cause, courts may consider a variety of factors, such as whether (1) the default was contumacious or willful; (2) setting it aside would prejudice the adversary; (3) the defaulting party presents a meritorious defense; (4) the default implicated the public interest; and (5) the defaulting party acted promptly to correct the default. *See Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996). A party willfully defaults by displaying either an intentional or reckless disregard for the judicial proceedings. *See id.* at 951-52 (finding willful default where a litigant was given "ample opportunity to comply with court orders but fail[ed] to effect any compliance," as the court had exhibited "considerable patience" in granting the party several extensions).

Mr. Lindsey argues that the district court erred in setting aside the default judgment against the FDLE by failing to give due consideration to his argument that the FDLE could not establish "good cause" sufficient to set aside the default based on its lack of internal procedural safeguards in handling cases. For this proposition, he cites to *Rita v. United States*, 551 U.S. 338 (2007), and *Funchess v. Wainwright*, 772 F.2d 683, 694 (11th Cir. 1985). Mr. Lindsey's reliance on those decisions is misplaced.

Both decisions involve claims concerning criminal sentences. *See Rita*, 551 U.S. at 356-57; *Funchess*, 772 F.2d at 693-94.

The Supreme Court's decision in *Rita* concerned 18 U.S.C. § 3553(c), which explicitly requires the sentencing court, "at the time of sentencing," to "state in open court the reasons for its imposition of the particular sentence." *See* 551 U.S. at 356. No such statutory mandate exists for courts ruling on defaults. *See generally* Fed. R. Civ. P. 55. As for *Funchess*, that decision cuts against Mr. Lindsey because it recognizes the assumption that "all courts base rulings upon a review of the entire record." *See* 772 F.2d at 693-94 (stating that the "fact that the sentencing order does not refer to the specific types of non-statutory 'mitigating' evidence petitioner introduced indicates only the trial court's finding [that] the evidence was not mitigating, not that such evidence was not considered") (citation omitted). As such, Mr. Lindsey cannot show that the district court erred in its implicit rejection of his good cause argument. *See, e.g., Onishea v. Hopper*, 171 F.3d 1289, 1303 (11th Cir. 1999) (court's findings that were inconsistent with plaintiffs' argument were an "implicit rejection" of that argument).

Mr. Lindsey's underlying "good cause" argument also fails on the merits. First, the conduct did not appear to willful, as the FDLE filed the motion to set aside the default soon after the entry of default. There also was no evidence that the FDLE had "continuously mishandled" the matter, *see Robinson v. United States*, 734 F.2d 735, 739 (11th Cir. 1984), or had failed to respond despite prior accommodations from the court, *see Compania Dominicana*, 88 F.3d at 952. Further, given the FDLE's prompt response to the

entry of default, Mr. Lindsey did not suffer prejudice, as the timeline of the matter proceeded effectively as if there had been no delay.[2]

## IV

The district court's orders are affirmed.

**AFFIRMED.**

---

[2] Nor can it be said, as Mr. Lindsey argues, that adequate procedural safeguards would have ensured a timely response from the FDLE. *See Heaton v. Bonacker & Leigh*, 173 F.R.D. 533, 536 (M.D. Ala. 1997). This was not a cascade of individual errors resulting in an "internal communications breakdown," *id.*, but rather, an unfortunate consequence of a series of untimely absences.