**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-13428

Non-Argument Calendar

_____

In Re: HOWARD AVENUE STATION, LLC,

*Debtor.*

_____

HOWARD AVENUE STATION, LLC,

*Plaintiff-Counter Defendant-Appellant,*

THOMAS ORTIZ,

*Plaintiff-Appellant,*

versus

THE DUBLINER, INC.,
RICHARD CAMPION,

*Defendants-Appellees,*

FRANK KANE,

*Defendant-Counter Claimant-Appellee.*

---

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:23-cv-02346-TPB,
Bkcy No. 8:12-bk-08821-CPM

---

Before JILL PRYOR, BRASHER, and TJOFLAT, Circuit Judges.

PER CURIAM:

On June 6, 2012, Howard Avenue Station, LLC ("HAS"), represented by its managing member, Thomas Ortiz, filed a Chapter 11 petition in the Bankruptcy Court for the Middle District of Florida. HAS represented that its business consisted of consulting services in addition to the development and purchase of commercial property. One of HAS's assets is a lease granted to HAS by Frank Kane in July 2009. The lease includes a building located on South Howard Avenue in Tampa, FL and the second floor of a building located at 2307 West Azeele Street, Tampa, FL.

In an adversary proceeding HAS brought against The Dubliner, Inc.,[1] HAS sought a judgment declaring that a small parcel of real estate adjoining the building on South Howard Avenue is part of its lease with Kane. After Kane intervened in the adversary proceeding and denied that the parcel at issue was part of the lease, the bankruptcy court heard the matter and denied HAS the declaratory relief it sought.

---

[1] The Dubliner occupies the first floor of the building at 2307 West Azeele Street pursuant to a lease Kane granted The Dubliner in 2002.

HAS appealed the decision to the District Court, which affirmed. HAS[2] now appeals the District Court's decision. We affirm.

## I.

Because the lease's interpretation depends heavily on the surrounding circumstances and course of dealings between the parties, the background warrants detailed discussion. The following section therefore provides a fuller account of the factual and procedural history necessary to understand the dispute.

### A.

This appeal concerns a portion of a courtyard (the "Disputed Area") lying between two adjacent lots located at the corner of West Azeele Street and South Howard Avenue in Tampa, Florida. Frank Kane owns both lots and rents them to commercial tenants. HAS entered into a written lease ("2009 HAS Lease") with Kane on July 20, 2009, to lease the units on the first floor of the building located on the southeast side of the lots directly on the intersection of West Azeele Street and South Howard Avenue ("Howard Avenue building"). The leased units have the addresses 309, 311, 315,[3] and 317 South Howard Avenue.

---

[2] HAS and Ortiz filed separate appellate briefs; however, because both appellants raise largely the same issues and Ortiz is HAS's principal, they are referred to collectively as "HAS" for clarity.

[3] The original 2009 HAS Lease refers to "313" rather than "315" South Howard Avenue. This was determined to be a scrivener's error during previous

The Dubliner leases the first floor of the other building located at 2307 West Azeele Street ("Azeele Street building"), which is directly west of the Howard Avenue Building. The Dubliner entered into a written lease agreement with Kane in 2002 ("Dubliner Lease"). The Dubliner Lease expired in 2012; however, it continued under an oral month-to-month extension of that same lease. The Dubliner operates an Irish pub out of the first floor of the Azeele Street building.

Between the Howard Avenue building and the Azeele Street building lies a courtyard. HAS occupies the eastern portion of the courtyard from South Howard Avenue to the east side of a wooden dividing wall running north to south. The Dubliner occupies the western portion of the courtyard, from the Azeele Street building to the west side of the wooden dividing wall—and has done so since first occupying its building in 2002. The wooden dividing wall was put in place prior to either HAS or the Dubliner occupying their respective spaces. Shortly after occupying the Azeele Street building, The Dubliner constructed an elevated wooden deck extending into this area. Although the deck has since been removed, The Dubliner has continued to use the entire space from the east side of its building to the west side of the wooden dividing fence.

The Disputed Area contested by the parties concerns a twelve-foot strip on the eastern side of the courtyard extending to the dividing wall. HAS contends that the Disputed Area was leased

litigation by the parties and was reformed to reflect the correct address, 315 South Howard Avenue. This opinion uses the corrected address.

to it under the 2009 HAS Lease and seek to recover the use of this space as property of the bankruptcy estate.

*B.*

In 2002, The Dubliner entered into the Dubliner Lease. Several years later, in 2006, Ortiz and HAS entered into a "Master Commercial Lease" (the "Master Lease") as well as a separate option agreement which gave HAS the option to purchase the leased properties. The Master Lease gave a legal description of the leased properties; however, it explicitly stated that it was subject to existing tenant leases, which would include the Dubliner Lease that had been in effect since 2002. The Dubliner Lease was set to expire in 2007, which would have granted HAS the right to possess all The Dubliner's space upon expiration. However, in June 2006, The Dubliner exercised its option to renew the lease for an additional five years—subjecting HAS's Master Lease to the Dubliner Lease until 2012.

In 2007, The Dubliner filed an action in Florida state court against HAS, Ortiz, and Kane seeking a declaratory judgment regarding disagreements over the Disputed Area that had been brewing. Kane, HAS, and Ortiz argued that the Dubliner Lease had not been validly renewed, and that even if it had, it did not cover the Disputed Area. Kane asserted that the Disputed Area has been separately leased to The Dubliner under an oral month-to-month lease, which would have granted Kane the ability to terminate that separate agreement at any time—which in turn would grant HAS possession of that space under the Master Lease. On March 4, 2008,

the state court ruled in favor of the Dubliner on both issues: that the Dubliner Lease had been effectively renewed and that it covered the Disputed Area. Partial judgment was entered in July 2008, and final judgment was entered on May 24, 2009.

In July 2009, two months after final judgment was entered in the state court litigation, Kane, Ortiz, and HAS terminated the Master Lease and entered into the 2009 HAS Lease. The 2009 HAS Lease differed in several ways from the Master Lease that it replaced. First, instead of leasing the entirety of both parcels, it only leased the downstairs of the Howard Building and the upstairs of the Azeele building to HAS. Second, it described the demised premises solely in terms of discrete addresses of the leased units, rather than legal descriptions covering both parcels. Finally, the 2009 HAS Lease was silent regarding other existing leases and the Disputed Area.

The 2009 HAS Lease contained several references to exterior spaces. In Section 1, the lease defined "Buildings and exterior space" by the following text and by referencing an attached photograph ("Section 1 Photograph"):

> Buildings and exterior space: see Composite Exhibit "A" which includes a photograph of the fenced off area and storage unit in the rear of the Howard Avenue bldg. to be included as part of the Demised Premises.

The photograph provided in Composite Exhibit A did not include the Disputed Area.

Section 2 of the lease provided that Kane "[h]ereby leases, lets and demises to the Tenant and Tenant hereby leases and hires from Landlord the Demised Premises, more particularly described in Composite Exhibit 'A' (sketch)" ("Section 2 Sketch"). No sketch was attached to the lease.

Three years after signing the 2009 HAS Lease, on June 6, 2012, HAS filed for bankruptcy. Shortly afterwards, in August 2012, the Dubliner Lease expired. Upon its expiration, The Dubliner continued leasing the bottom floor of the Azeele Street property through an oral month-to-month agreement with Kane, pursuant to which The Dubliner continued to occupy its previous premises in the Azeele Street property, the western side of the courtyard, and the Disputed Area.

On October 10, 2012, HAS commenced the present litigation, seeking a declaration that the 2009 HAS Lease confers the right to occupy the Disputed Area and turnover of the Disputed Area as property of the bankruptcy estate. Kane intervened as a defendant in the litigation and filed a counterclaim seeking a declaration that the 2009 HAS Lease does not grant HAS the right to possess or occupy the Disputed Area, despite taking the opposite position in the earlier 2007 state court litigation. HAS's principal, Ortiz, was also made a party to the litigation.

Kane moved for summary judgment. The bankruptcy court granted the motion and entered final judgment on Count 1 based on collateral estoppel, holding that the state court proceeding from

2007 precluded HAS's claim because the state court had previously ruled in favor of The Dubliner regarding the Disputed Area.

HAS and Ortiz appealed to the district court. Judge Honeywell, writing for the district court, reversed, finding that the requirements for collateral estoppel were not met. *In re Howard Ave. Station, LLC*, No. 8:12-BK-08821-CPM, 2022 WL 4377506 (M.D. Fla. Sept. 22, 2022). The court reasoned that the state court in the 2007 litigation decided the issue of possession of the Disputed Area by interpreting the 2002 Dubliner Lease. *Id.* at 12-13. In contrast, the present case concerned interpretation of the 2009 HAS Lease, which wasn't even in existence at the time of the 2007 state court litigation. *Id.* Therefore, the court reversed the bankruptcy court's grant of summary judgment based on collateral estoppel and remanded it for further proceedings. *Id.* at 15.

However, the district court added that the state court's ruling "provides persuasive—perhaps even dispositive—evidence against HAS's argument that the parties intended to include the deck area in the 2009 HAS Lease." *Id.* at 14. But that the parties' intent "is a factual finding about a material event that occurred after the state court proceeding, not a basis for summary judgment." *Id.*

Following remand, the parties found themselves back in the bankruptcy court attempting to resolve the issue of possession of the Disputed Area. At the close of HAS's case-in-chief, Kane and the Dubliner filed a Rule 52(c) motion for judgment on partial findings, arguing that the 2009 HAS Lease unambiguously did not

cover the Disputed Area, or in the alternative, if there was ambiguity, HAS had failed to present extrinsic evidence proving that the lease covered the Disputed Area.

The court reserved ruling on the Rule 52(c) motion, desiring to hear Kane's testimony regarding the intent of the 2009 HAS Lease. The lack of the Section 2 Sketch created an ambiguity as to the intent of the parties that the court wanted to flesh out. Kane testified that he did not know why the sketch was not included with the lease, but that the sketch would not have included the Disputed Area. He stated that he considered the Disputed Area to be part of the 2307 Azeele parcel and that he had always rented it that way.

After The Dubliner and Kane presented their case, the bankruptcy court granted their Rule 52(c) motion from earlier in the trial. The court based its decision on Kane's testimony, the historical usage of the Disputed Area, and the language of the 2009 HAS Lease read in the context of the previous Master Lease and the previous 2007 state court litigation.

HAS requested the opportunity to rebut Kane's testimony regarding the sketch. Ortiz, HAS's principal, intended to testify that Kane told him that the sketches were unnecessary because the addresses listed in the lease were sufficient. The bankruptcy court denied HAS's request, stating that they should have presented that evidence during their case in chief and that such evidence would not resolve the ambiguity as to the scope of the 2009 HAS Lease.

Undeterred, HAS appealed yet again, this time to the District Court from which this appeal is being heard. The District

Court, functioning as an appellate court, heard the many appeals raised by HAS. Finding the appeal without merit, Judge Barber, writing for the District Court, affirmed the bankruptcy court's final judgment as to Count I of the plaintiff's complaint and Count II of Frank Kane's Counterclaim.

Still unhappy with the result, HAS now timely appeals.

## II.

"In a bankruptcy case, this Court sits as a second court of review and thus examines independently the factual and legal determinations of the bankruptcy court and employs the same standards of review as the district court." *In re Brown*, 742 F.3d 1309, 1315 (11th Cir. 2014) (internal citations omitted). "Furthermore, when a district court affirms a bankruptcy court's order, as the district court did here, this Court reviews the bankruptcy court's decision." *Id.* (internal citations omitted). "We review the bankruptcy courts factual findings for clear error and its legal conclusions *de novo*." *Id.*

## III.

HAS raises a number of issues on appeal. They can be broadly categorized into four major issues for our review: (1) whether the District Court applied the correct standard of review in its review of the bankruptcy court's final judgment, (2) whether the District Court properly interpreted the 2009 HAS Lease under Florida Law, (3) whether the District Court impermissibly relied on dicta and prior rulings, and (4) whether the bankruptcy court deprived HAS of a fair opportunity to present its case at trial.

*A.*

The first issue on appeal is whether the District Court applied the correct standard of review in reviewing the bankruptcy court's determination that the 2009 HAS Lease was ambiguous. HAS argues that the District Court applied the clearly erroneous standard to its review of the bankruptcy court's interpretation of the lease, which is a contract and should therefore be reviewed *de novo*. *See Tims v. LGE Cmty. Credit Union*, 935 F.3d 1228, 1237 (11th Cir. 2019) (citing *Gibbs v. Air Canada*, 810 F.2d 1529, 1532 (11th Cir. 1987)) ("Questions of contract interpretation are pure questions of law, also reviewed *de novo*.").

HAS cites to the conclusion paragraph of the District Court's order affirming the bankruptcy court's final judgment as proof that the District Court failed to review *de novo* the bankruptcy court's determination that the 2009 HAS Lease was ambiguous.

> The bankruptcy court did not err in its interpretation of the HAS Lease or in entering judgment for The Dubliner and Kane. The court correctly concluded the HAS Lease was ambiguous and appropriately considered extrinsic evidence to deduce its meaning. After weighing the available evidence, the court concluded that the parties did not intend to include the disputed area in the lease. This conclusion was not clearly erroneous. The judgment of the bankruptcy court is therefore affirmed.

*In re Howard Ave. Station, LLC*, No. 8:12-AP-00935-CPM, 2024 WL 4349342, at *9 (M.D. Fla. Sept. 30, 2024).

HAS's interpretation of this paragraph is, at best, a misinterpretation of the District Court order. The sentence declaring the conclusion was not "clearly erroneous" is directly preceded by a description of the bankruptcy court "weighing the available evidence." *Id.* The District Court makes a declarative statement about the bankruptcy court's interpretation of the contract—that it was "correct[]." *Id.* This constitutes a *de novo* review of the contract because the District Court did not defer to the bankruptcy court, but rather independently considered the issue and found that it comported with the bankruptcy court's interpretation.

HAS does not point to any other portions of the District Court opinion to prove that the District Court failed to review the contract *de novo*. They are unable to do so because the District Court clearly conducted a *de novo* review of the lease, devoting multiple pages of the order to the review. *See In re Howard Ave. Station*, WL 4349342, at *6-8.

Regardless, upon our *de novo* review of the 2009 HAS Lease, we find that the lease was ambiguous. HAS argues that the lease unambiguously grants it the right to occupy the Disputed Area because the lots associated with the addresses it leased from Kane contain the Disputed Area. However, HAS fails to say why that would be the case.

Under Section 1 of the 2009 HAS Lease, Kane describes the exterior spaces granted under the lease as "the fenced off area and storage unit in the rear of the Howard Avenue bldg" included in the Section 1 Photograph. The Section 1 Photograph does not

include the Disputed Area. Furthermore, it is simply not the case that a reading of a lease term which describes a "fenced off area" could unambiguously contain the Disputed Area, which extends beyond the dividing fence—or in other words, a section of outdoor space that is not "fenced off."

Adding to the ambiguity, Section 2 of the lease refers to the Section 2 Sketch, which allegedly describes the Demised Premises in greater particularity, but is not included in the lease for one reason or another. The lack of the Section 2 Sketch creates inherent ambiguity in the 2009 HAS Lease and, therefore, the need for the Court to consider extrinsic evidence. For HAS to say otherwise borders on frivolous. If anything, the lease unambiguously *does not* include the Disputed Area.

*B.*

Next, HAS argues that even if the 2009 HAS Lease is ambiguous, the District Court erred in its interpretation. HAS argues that under Florida law, tenants are entitled to the entire parcel of land associated with the addresses listed in the lease. Under this logic, it does not matter that the language describing the exterior spaces of the 2009 HAS Lease, the Section 1 Photograph, and Kane's testimony as to the content of the Section 2 Sketch do not contain the Disputed Area. Rather, since the lease demises "309, 311, [315], [and] 317 South Howard Avenue" to HAS, HAS is entitled to occupy the entirety of the parcel associated with those addresses.

HAS relies heavily on *Mendelson v. Great W. Bank, F.S.B.* to support its contention that tenants are entitled to the entire parcel

associated with the addresses contained within the lease. 712 So. 2d 1194 (Fla. Dist. Ct. App. 1998). This is a misread of *Mendelson*. *Mendelson* holds that street addresses can satisfy the description requirement to validly convey land. However, nothing in *Mendelson* supports HAS's contention that the description of the lot in the public records automatically trumps other extrinsic evidence when describing the leased property. HAS makes no additional argument as to why the 2009 HAS Lease, properly interpreted, grants them the right to occupy the Disputed Area.

Upon our *de novo* review, we conclude that the 2009 HAS Lease does not grant HAS the right to occupy the Disputed Area. Under the "buildings and exterior spaces" section, the lease demises "the fenced off area and storage unit in the rear of the Howard Avenue bldg." as described in the Section 1 Photograph. The Section 1 Photograph does not include the Disputed Area. Additionally, the Disputed Area is beyond the dividing fence, so HAS's interpretation of the contractual language contradicts the plain reading of "fenced off area."

Furthermore, the bankruptcy court found, based on Kane's testimony, that Kane did not intend to include the Disputed Area in the lease and that, despite the Section 2 Sketch not being attached to the 2009 HAS Lease, the sketch would not have included the Disputed Area.

Finally, historical usage and context weigh in favor of Kane and The Dubliner. The Dubliner has been occupying the Disputed Area since 2002—for over twenty years. As Judge Honeywell

noted, just two months prior to signing the 2009 HAS Lease, the state court ruled against HAS holding that The Dubliner was properly occupying the Disputed Area. Both parties knew that the Disputed Area was occupied by The Dubliner, contested by HAS, and that a state court had recently held that The Dubliner's occupation of it was lawful. Keeping this context in mind, it is difficult to believe that the parties intended for the lease terms demising the addresses of the HAS Building to include the Disputed Area. If they truly intended to include the Disputed Area, they would have done so more explicitly.

## C.

Next, HAS argues that the District Court impermissibly relied on dicta from Judge Honeywell's opinion in its prior appeal. This argument is completely without merit. HAS argues that by relying on Judge Honeywell's dicta, the District Court gave preclusive effect to the state court ruling, which would result in The Dubliner being forever assigned the Disputed Area. This completely mischaracterizes Judge Honeywell's opinion; in fact, she stated the opposite. *See In re Howard Ave. Station, LLC*, WL 4377506 at *14 (holding that the earlier state court litigation was not dispositive in the current litigation). Rather, Judge Honeywell simply suggested that the existence of the state court litigation was relevant to interpreting the intent of the parties when they wrote the 2009 HAS Lease. *Id.*

Likewise, there is nothing improper about Judge Barber here referencing Judge Honeywell's opinion. HAS fails to cite any

law that prohibits one district court judge from referencing dicta from another judge's opinion. Judge Barber simply references the commonsense idea that parties who recently engaged in litigation would consider their previous legal disputes when drafting a new contract, especially regarding the same piece of property.

*D.*

Finally, HAS argues that the bankruptcy court deprived it of a right to present its case and to be fully heard.

Under Federal Rule of Civil Procedure 52(c), trial courts are permitted to enter judgment against a party at any time provided that the party has been "fully heard," the court finds against them on that issue, and the party must prevail on that issue in order to succeed. Fed. R. Civ. P. 52(c). Fed. R. Bankr. P. 7052 makes Rule 52(c) applicable to bankruptcy proceedings.

Following the presentation of HAS's case in chief, Kane and The Dubliner filed a Rule 52(c) motion for judgment on partial findings. The bankruptcy court reserved ruling on the motion, wishing to hear further evidence. After Kane and The Dubliner presented their case, including Kane's testimony about the Section 2 Sketch, the bankruptcy court granted their Rule 52(c) motion. HAS alleges that it was not "fully heard" as Rule 52(c) requires because the bankruptcy court denied its request to present additional testimony from Ortiz to counter Kane's testimony. Ortiz intended to testify that both parties had agreed not to include the Section 2 Sketch because the addresses were sufficient to describe the area encompassed by the lease.

As our sister courts have noted, the right to be "fully heard" does not "amount to a right to introduce every shred of evidence that a party wishes, without regard to the probative value of that evidence." *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 272 n.21 (3d Cir. 2010) (quoting *First Va. Banks, Inc. v. BP Exploration & Oil, Inc.*, 206 F.3d 404, 407 (4th Cir.2000)) (internal quotation marks omitted). Therefore, it is within the bankruptcy court's jurisdiction to enter a judgment on partial findings even though the nonmoving party indicates that it could enter further evidence, provided that the evidence would have little or no probative value. *Id.*

Here, HAS presented its entire case in chief, including testimony from Ortiz. HAS had the opportunity to question both Ortiz and Kane about the contents of the Section 2 Sketch but chose not to. However, most importantly, had Ortiz's potential testimony about the sketch been accepted by the bankruptcy court, it would not have changed the outcome. The absence of the Section 2 Sketch created an ambiguity, which the bankruptcy court resolved by considering other external evidence. Ortiz's testimony, that the Section 2 Sketch did not need to be included because of the addresses included in the lease, would not support HAS's interpretation of the lease.

Therefore, the bankruptcy court did not err in refusing to allow HAS to present rebuttal evidence.

## IV.

For the foregoing reasons, the Order Affirming Bankruptcy Court's Final Judgment is affirmed.

**AFFIRMED.**